Burleson, Appellant, *v.* Midwest Transfer Co., Appellee.

(No. 8756—Decided April 11, 1960.)

*Mr. Robert P. Moore,* for appellant.
*Mr. William F. Boelter,* for appellee.

Long, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Hamilton County.

On August 21, 1958, during the night season, at about 11 p. m., the defendant, Midwest Transfer Company, through its agent and driver, Thomas R. Sayre, was operating a large tractor-trailer on the premises of the Philip Carey Company. The driver had made a delivery to the Carey Company and was leaving its premises. On his way out, the accident occurred, which gives rise to this law suit.

Some of the facts are in dispute. A jury heard the testimony and decided in favor of the defendant.

As briefly as can be stated, the plaintiff, an employee of the Carey Company, was working in the "shredder shed." This is a building in front of which large quantities of scrap material are deposited, which are then taken to the shredder, ground up, and ultimately converted into asphalt. The pile of scrap was so high that plaintiff had to walk around the pile to get some rolls of the material which he was going to throw into the shredder; the scrap was adjacent to the driveway being used by the tractor-trailer; and the driveway, incidentally, was just wide enough for the passage of one vehicle. At the location of the shredder building, the roadway makes a right-angle turn. The plaintiff was first observed by the truck driver inside the building, standing at the door with a fellow employee. Visibility was good, because of the lights in the plant and on the truck. The front end of the truck passed the plaintiff, and the driver said that he was looking into his rear-vision mirror for the purpose of watching the clearance of his truck and the corner of the shredder building. It was at this point that the driver saw plaintiff walking around the edge of the scrap pile toward the truck. After two-thirds of the truck had passed plaintiff, he (plaintiff) was "grabbing at the side of the truck as if to prevent a fall."

After the accident, the following was testified to by the witness Rhodes, production foreman of the Philip Carey Company:

"Q. When you arrived at the scene of the accident and came up to Mr. Burleson [plaintiff] can you describe to us what you did, in reference to the man's condition and the things that occurred at the particular time? A. Well, when I got to George [plaintiff] I asked him if he was hurt and he said 'Yes, I am,' and I said what in the world happened and he said that '*he had slipped on those rolls as he was going out in the roadway to throw some scrap rolls back into the shredder shed, as he was going out he slipped and evidently fell toward the truck.*'" (Emphasis added.)

It must be kept in mind that Rhodes was a foreman for the same company for which the plaintiff worked, and if he were so inclined, he would likely favor plaintiff's side of the case, rather than defendant's.

It is the opinion of the court that what the plaintiff told Rhodes immediately after the accident is undoubtedly what happened. This being so, a verdict for the plaintiff would have been manifestly against the weight of the evidence.

Plaintiff urges upon this court that because Section 4511.08, Revised Code, gives owners of private property the right to establish rules in connection with the operation of vehicles thereon, the violation of such rules could be considered as negligence; and that the failure of the trial court to so state in his general charge was prejudicial to plaintiff. With this view we cannot concur. As between the owner and the violator of any such rule, the owner could put the violator off his property, but the owner can not give to such rules the effect of ordinances or statutes, the violation of which could be considered negligence.

Plaintiff claims he was relying on "custom" with reference to the rules. If so, he must specially plead the same and show that defendant was advised of the custom; the evidence here is to the contrary. Obviously plaintiff's special charges in this respect were properly refused.

Plaintiff's complaint about the court's refusal of the charge on blowing the horn is equally unfounded, for the reason that failure to blow the horn had no causal connection between it and the happening of the accident. When the front of the truck had passed plaintiff, he was in a place of safety; it was not then necessary to blow the horn. Likewise, the charge with reference to "signs" was properly refused; the nearest "sign" was three squares away, and besides they merely announced the rule of ordinary care that anybody would have followed under the facts of this case, to wit, "drive slowly."

Both sides offered evidence of speed. One of plaintiff's witnesses testified that the truck driver was going fifteen miles per hour. The driver testified that he was not going over five miles per hour, and that, from the railroad tracks to the place where he turned, the mechanics of the truck would not have permitted a speed in excess of five miles per hour.

It was admitted that no horn was blown, which, in any case, was unnecessary.

Photographs were taken, and altogether the case was well tried on both sides,

As we read this record we are convinced that no verdict except one for the defendant could have been rendered.

There being no prejudicial error apparent upon the record, the judgment is affirmed.

*Judgment affirmed.*

MATTHEWS, P. J., and O'CONNELL, J., concur.