**The STATE of Ohio, Appellant,**

**v.**

**CAMPBELL, Appellee.**

[Cite as *State v. Campbell* (1997), 117 Ohio App.3d 762.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15786.

Decided Jan. 24, 1997.

*John J. Amarante*, Montgomery County Assistant Prosecuting Attorney, Appellate Division, for appellant.

*Harry G. Beyoglides, Jr.*, for appellee Joshua S. Campbell.

FAIN, Judge.

Plaintiff-appellant the state of Ohio appeals from the dismissal of one count of an indictment alleging involuntary manslaughter as a result of the commission of a "traffic violation." Because we conclude that the application of the involuntary manslaughter statute to minor misdemeanors consisting of strict liability traffic violations involving no mental culpability would involve the imposition of punishment that is grossly disproportionate to the offense in violation of the Cruel and Unusual Punishment Clauses of both the United States and Ohio Constitutions, we agree with the trial court that the dismissed count of the indictment was constitutionally deficient. Accordingly, the order dismissing that count of the indictment is affirmed.

I

On November 7, 1995, defendant-appellee Joshua S. Campbell was indicted upon one count of involuntary manslaughter, in violation of R.C. 2903.04(A), and upon a second count of aggravated vehicular homicide, in violation of R.C. 2903.06(A), both with alcohol or drug specifications pursuant to R.C. 4507.16. In connection with the first count, the grand jury found probable cause to believe that Campbell proximately caused the death of Marva Dillard while committing a minor misdemeanor—a traffic violation. In connection with the second count, the grand jury found probable cause to believe that the death was caused while Campbell was recklessly operating a motor vehicle. Both counts alleged that Campbell was under the influence of alcohol or drugs.

During his arraignment on November 28, 1995, Campbell pled not guilty to the offenses as charged. On November 30, 1995, Campbell filed a motion to dismiss the first count of his indictment because the offense described was incompatible with the alleged statutory violation and because the statute describing the offense was overbroad and would result in cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. On December 15, 1995, the state filed its response to Campbell's motion and moved to amend the first count of the indictment to indicate a violation of R.C. 2903.04(B) rather than R.C. 2903.04(A). The trial court granted the state's motion to amend the typographical error. On February 27, 1996, the trial court also granted Campbell's motion to dismiss the first count of the indictment, holding that the mere allegation of a minor misdemeanor offense as a predicate for an indictment for involuntary manslaughter violated the Eighth Amendment to the United States Constitution. On March 4, 1996, the trial court vacated its February 27, 1996 decision based on typographical errors and reissued a corrected decision.

From the judgment of the trial court, the state appeals.

## II

The state's sole assignment of error is as follows:

"The trial court erred when it dismissed the involuntary manslaughter count in the indictment."

## A

The issue presented in this case is whether the involuntary manslaughter statute, as applied to an indictment that does not allege any particular mental culpability state for the underlying predicate offense, is unconstitutional. The state contests the trial court's holding that R.C. 2903.04(B), as applied, violates the Eighth Amendment to the United States Constitution. In its decision, the trial court reasoned that the punishment for violation of R.C. 2903.04(B)—a third-degree felony—is disproportionate to the crime committed where the predicate crime is a minor misdemeanor based on strict liability. The trial court compared R.C. 2903.04(B) with other homicide statutes, such as negligent homicide, R.C. 2903.05, and vehicular homicide, R.C. 2903.07, first-time violations of which warranted only first-degree misdemeanor convictions. Also, the trial court observed that negligent homicide and vehicular homicide require the state to prove the *mens rea* of negligence beyond a reasonable doubt, whereas involuntary manslaughter requires the state to prove only a minor misdemeanor, often a strict liability crime. The trial court found that the punishment for involuntary manslaughter based on a predicate minor misdemeanor is disproportionate to the misconduct involved in a strict liability crime. Accordingly, the trial court concluded that Count One of the indictment, by citing a minor misdemeanor as the predicate offense for a violation of R.C. 2903.04(B), violated the protection against cruel and unusual punishment found in the Eighth Amendment to the United States Constitution and in Section 9, Article I of the Ohio Constitution.

Before reviewing this constitutional issue, we are reminded of the strong presumption in favor of legislative enactments. *State v. Collier* (1991), 62 Ohio St.3d 267, 269, 581 N.E.2d 552, 553 ("It is well established that all legislative enactments must be afforded a strong presumption of constitutionality."). We are further guided by the principle that "any reasonable doubt regarding the constitutionality of a legislative enactment must be resolved in favor of the General Assembly's power to enact the law." *State v. McDonald* (1987), 31 Ohio St.3d 47, 48, 31 OBR 155, 156, 509 N.E.2d 57, 59. It is with this general understanding that we now determine whether R.C. 2903.04(B), as applied in this case, violates the constitutional prohibition against cruel and unusual punishment.

Prior to its September 29, 1994 amendment, R.C. 2903.04(B) provided that "[n]o person shall cause the death of another as a proximate result of the

offender's committing or attempting to commit a misdemeanor." The Supreme Court of Ohio interpreted the word "misdemeanor," as used in the statute, as not to include minor misdemeanors, since the General Assembly had previously classified misdemeanors and minor misdemeanors separately. *State v. Collins* (1993), 67 Ohio St.3d 115, 117, 616 N.E.2d 224, 225–226. The court also held that strict liability traffic offenses that were more culpable than minor misdemeanors could serve as valid underlying offenses to R.C. 2903.04(B). In support of its decision, the court found persuasive Judge Cacioppo's oft cited quote from LaFave & Scott, Criminal Law (2 Ed.1986) 683, Section 7:13:

" ' * * * There is no logical reason for inflicting manslaughter punishment on one who unintentionally kills another simply because he is committing a traffic violation, unless it makes sense to punish the one-in-a-thousand traffic violation, which by bad luck produces an unexpected death, far more severely than the nine hundred and ninety-nine violations which happily do not produce any such devastating result. * * * It is true that, in the case of crimes defined in terms of bad results, it is often something of an accident whether the specified result occurs or not. Where one seriously wounds another by shooting at him with intent to kill, or severely but unintentionally injures him by reckless driving, chance often takes a hand in deciding whether the victim dies or recovers, and thus whether the defendant receives a greater or lesser punishment. If the bad result which happens is actually intended, or if it is recklessly produced (especially by one conscious of the risk), it does not seem too harsh to make the severity of his punishment depend somewhat on the actual result, however accidental. Where, however, the result is both unintended and produced without any consciousness of the risk of producing it, it seems too harsh and illogical.' "

On September 29, 1994, the General Assembly amended R.C. 2903.04(B) to include minor misdemeanors expressly. After the amendment, R.C. 2903.04(B) provided that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor." Violation of R.C. 2903.04(B) remained an aggravated felony of the third degree. R.C. 2903.04(C).

██ The Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution provide that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Application of this principle is limited to extraordinary circumstances:

"It is generally accepted that punishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community.

"  *  *  *

"Where the offense is slight, more may be prohibited than savage atrocities. However the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." (Citations omitted.) *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 69–70, 30 O.O.2d 38, 39, 203 N.E.2d 334, 336; *State v. Chaffin* (1972), 30 Ohio St.2d 13, 17, 59 O.O.2d 51, 53–54, 282 N.E.2d 46, 49.

■ In determining the proportionality of the penalty to the offense, we must apply a tripartite test:

"[A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm* (1983), 463 U.S. 277, 292, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637, 650.

■ As a threshold matter, we acknowledge that "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin v. Michigan* (1991), 501 U.S. 957, 1005, 111 S.Ct. 2680, 2707, 115 L.Ed.2d 836, 872; see *State v. Lazada* (1995), 107 Ohio App.3d 189, 192, 667 N.E.2d 1292, 1294. An initial comparison suggests such gross disproportionality, so we will proceed with our tripartite analysis.

■ With respect to the first element, we must consider the seriousness of involuntary manslaughter predicated on a strict liability minor misdemeanor offense and the harshness of a third-degree aggravated felony conviction. As a threshold matter, we recognize that the taking of a human life, by itself, is a very serious offense. However, we must also consider the culpability of the offender in assessing the seriousness of the criminal act. See *Solem*, 463 U.S. at 293, 103 S.Ct. at 3011, 77 L.Ed.2d at 651. Most traffic violations are minor misdemeanors and, in addition, are strict liability crimes. See *Collins*, 67 Ohio St.3d at 117, 616 N.E.2d at 225–226. In the absence of *mens rea*, persons committing strict liability crimes are less culpable than persons committing crimes based on negligent or reckless mental states. Cf. R.C. 2901.22. Thus, the harm of the offense being equal, a crime predicated on the strict liability of the offender is generally less serious than a crime predicated on the negligence or recklessness of the offender.

■ With this distinction in mind, we will consider the severity of the punishment for involuntary manslaughter in relation to the punishments imposed

for similar homicide crimes. We are reminded that "[i]f more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive." *Solem,* 463 U.S. at 291, 103 S.Ct. at 3010, 77 L.Ed.2d at 650.

In its decision, the trial court compared R.C. 2903.04(B) with other homicide statutes. The negligent homicide statute, R.C. 2903.05, provides that "[n]o person shall negligently cause the death of another by means of a deadly weapon or dangerous ordnance * * *." Violation of the statute warrants a first-degree misdemeanor conviction. R.C. 2903.05(B). The vehicular homicide statute, R.C. 2903.07, provides that "[n]o person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall negligently cause the death of another." A first-time violation of the vehicular homicide statute also warrants a first-degree misdemeanor conviction. R.C. 2903.07(B). The trial court also compared the involuntary manslaughter statute to the aggravated vehicular homicide statute. The aggravated vehicular homicide statute provides that "[n]o person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall recklessly cause the death of another." A first-time violation of the aggravated vehicular homicide statute warrants a third-degree aggravated felony conviction. R.C. 2903.06(B).

Our review of this statutory scheme indicates that involuntary manslaughter predicated on a strict liability minor misdemeanor is punished more severely than crimes demanding greater culpability from the offender. By statutory design, negligence is considered a more culpable mental state than that afforded to strict liability crimes. Cf. R.C. 2901.22; R.C. 2901.02. Both negligent homicide and vehicular homicide require the state to prove beyond a reasonable doubt that the offender was negligent, and both punish the first-time offense as a first-degree misdemeanor. In contrast, the less culpable, and therefore less serious, crime of involuntary manslaughter predicated on the commission of a strict liability minor misdemeanor warrants a third-degree aggravated felony conviction, the same as a conviction for aggravated vehicular homicide, which requires the state to prove beyond a reasonable doubt that the offender was reckless. In short, more serious crimes are subject to the same or lesser penalties, thus indicating that the punishment for R.C. 2903.04(B) may be excessive.

Our review of other jurisdictions further suggests that a third-degree aggravated felony conviction for involuntary manslaughter predicated on a strict liability minor misdemeanor may be disproportionate to the offense. A majority of states have turned away from unlawful-act involuntary manslaughter statutes and instead turned to a criminal-negligence standard for involuntary manslaughter. LaFave & Scott, Substantive Criminal Law (1986) 287, Section 7.13. A survey of

the states that have retained unlawful-act involuntary manslaughter statutes suggests that few if any would permit a felony conviction based on a strict liability minor misdemeanor. In Iowa, involuntary manslaughter may be predicated on a "public offense," but the common-law construction of the statute requires the state to prove that the motor vehicle operator was in wanton and reckless disregard of the safety of others. Iowa Code Ann. 707.5(1); *State v. Conner* (Iowa 1980), 292 N.W.2d 682, 686. Louisiana predicates its involuntary manslaughter charge on "intentional" misdemeanors. La.Rev.Stat. 14:31. New Mexico's courts have constructed the involuntary manslaughter statute to require a showing of criminal negligence during the unlawful act. N.M.Stat.Ann. 30–2–3; *State v. Yarborough* (1995), 120 N.M. 669, 674, 905 P.2d 209, 214 ("[W]hen used as the basis for involuntary manslaughter, a petty misdemeanor is elevated to a felony and as such requires a showing of criminal negligence."). Similarly, Wyoming's involuntary manslaughter statute requires a showing that the unlawful act was "reckless." Wyo.Stat.Ann. 6–2–105. Georgia does not permit prosecution for involuntary manslaughter based solely upon traffic law violations, but instead prosecutes under its homicide-by-vehicle statute, first-time violations of which warrant a misdemeanor conviction. Ga.Code Ann. 40–6–393 (formerly 68A–903). In sum, we have not identified any jurisdiction that would permit a felony conviction for involuntary manslaughter premised on a strict liability minor misdemeanor.

From our tripartite analysis, we conclude that a felony conviction for causing the death of another as a proximate result of committing a strict liability minor misdemeanor—that is, a minor misdemeanor without any indicia of criminal negligence or of any more culpable mental state—is grossly disproportionate to the offense and shocks the sense of justice of the community. It is one thing to encourage motorists to exercise the highest degree of caution by imposing a modest fine when, through no apparent fault of the driver, a traffic regulation is violated; it is quite another to do so by imposing a sanction involving potential incarceration from two to ten years.

In order to bridge the gap in fault between traffic violations involving minor misdemeanors and traffic violations involving misdemeanors, we must require additional indicia of culpability on the part of the minor misdemeanor offender. In other words, only those commissions of minor misdemeanors that also exhibit the elements of criminal negligence, as defined by R.C. 2901.22(D), or a more culpable mental state, may serve as a valid underlying predicate offense for involuntary manslaughter.

In strict liability crimes, the necessary criminal culpability is imputed by the violation of the law itself, and application of this principle in motor vehicle cases is

based upon the need to encourage the highest standard of care in the operation of a motor vehicle, in view of the inherent risks.

"On the other hand, where a criminal statute prohibits and punishes conduct not innocent or innocuous in itself, the criminal intent element may be dispensed with if the criminal statute is designed for the protection of the public health and safety and if it has no common law background that included a particular criminal intent. Because citizens are presumed to know the ordinary traffic safety laws and that violating them is dangerous and wrong, Ohio's involuntary manslaughter statute, as applied in this case, is based on the obviously wrongful and blameworthy conduct of violating traffic safety laws." *Stanley v. Turner* (C.A.6, 1993), 6 F.3d 399, 404 (holding that R.C. 2903.04[B], as applied, did not violate the Due Process Clause of the United States Constitution).

. As a result, unexcused violations of traffic safety laws are considered to be *per se* negligent. Cf. *Oechsle v. Hart* (1967), 12 Ohio St.2d 29, 41 O.O.2d 215, 231 N.E.2d 306, paragraph one of the syllabus; *Mapes v. Opper* (1983), 9 Ohio App.3d 140, 141, 9 OBR 205, 206–207, 458 N.E.2d 892, 894–895.

For the purposes of involuntary manslaughter, one must look beyond the common-law presumption of negligence *per se* and determine whether the circumstances surrounding the underlying strict liability minor misdemeanor show that the offender, because of a lapse from due care, failed to perceive or to avoid a risk that his conduct might cause a certain result or might create certain dangerous circumstances. See R.C. 2901.22(D). If so, then the culpability of the offender is sufficient to warrant a felony conviction. Typically, this is the case where the driver violates a traffic law, even though he could have avoided doing so by the exercise of due care, and, as a result, causes a fatal accident. Cf. LaFave & Scott, Criminal Law (2 Ed.1986) 683, Section 7:13.

Although less common, there are circumstances in which a driver, convicted of a strict liability minor misdemeanor, exercised due care and was not negligent. For example, in *Kettering v. Greene* (1966), 9 Ohio St.2d 26, 38 O.O.2d 15, 222 N.E.2d 638, the defendant bus driver failed to stop for a stop sign at a street intersection while operating the bus for his employer. The defendant was cited for violating a city ordinance and found guilty. The court of appeals, in reversing the defendant's conviction, found that the defendant had no prior warning of any defect in the brakes and was not responsible for their condition or maintenance. The Supreme Court of Ohio reversed the court of appeals and held that "[t]he statutory requirement as to stopping in obedience to a stop sign is specific and mandatory. Brake failure is not a legal excuse for failure to comply." *Id.* at 27, 38 O.O.2d at 16, 222 N.E.2d at 638.

Under a broad application of the involuntary manslaughter statute, the defendant bus driver in *Greene,* had he struck and killed a pedestrian while rolling

through the stop sign, would have been guilty of violating R.C. 2903.04(B), a third-degree aggravated felony. It is this grossly disproportionate result that violates the constitutional prohibition against cruel and unusual punishment.

If, in the commission of a strict liability minor misdemeanor offense resulting in a fatality, the actor in fact fails to exercise due care, or has a more·culpable mental state such as recklessness or the intention to injure, the punishment prescribed for involuntary manslaughter would not be grossly disproportionate to the seriousness of the offense. The culpability of the offender rises to the level of criminal negligence, or higher, which exceeds the culpability of the strict liability misdemeanors identified by the Supreme Court of Ohio in *Collins*, 67 Ohio St.3d at 117, 616 N.E.2d at 225–226. With respect to similar homicide statutes, the culpability of the offender equals if not exceeds the culpability required under the negligent homicide and vehicular homicide statutes. Although the punishments for these two statutes warrant only first-degree misdemeanors for first-time offenders, the involuntary manslaughter statute, by premising conviction on a prefatory criminal act, further protects the public health and safety and therefore warrants more serious punishment. For example, a person who negligently causes the death of another while operating a motor vehicle on private land would be guilty of vehicular homicide, but since the act occurred outside the jurisdiction of most traffic laws, it could not lead to a conviction for involuntary manslaughter. Cf. *Burleson v. Midwest Transfer Co.* (1960), 113 Ohio App. 199, 17 O.O.2d 176, 171 N.E.2d 349, paragraph three of the syllabus ("A violation of a rule regulating the speed of automobiles on private property, established by the owner pursuant to authority conferred by Section 4511.08, Revised Code, of itself, may not be considered as negligence."); *Stinson v. Columbus & Chicago Motor Freight, Inc.* (App.1952), 69 Ohio Law Abs. 449, 125 N.E.2d 881, paragraph one of the syllabus ("Where an accident between two motor vehicles occurs on private property the statutory right of way provision has no application, the operators of the vehicles being controlled by the common law rule which required them to exercise ordinary care to avoid a collision."). Accordingly, the more serious crime of involuntary manslaughter, which involves the public health and safety, warrants a more severe punishment than negligent homicide and vehicular homicide. This more limited application of R.C. 2903.04(B) is consistent with the treatment of involuntary manslaughter by other jurisdictions in that at least criminal negligence is shown to warrant a felony conviction. See *Yarborough*, 120 N.M. at 674, 905 P.2d at 214.

The state argues in its brief that Campbell satisfies the mental culpability state required to avoid gross disproportionality—that he was, in fact, reckless. The problem with this argument is that count one of the indictment is constitutionally deficient. It does not allege any particular mental culpability state, but instead

alleges that Campbell's "traffic violation" resulted in the death of another. Before Campbell may be put to the ordeal of a trial, he is entitled to have a grand jury determine whether there is probable cause to believe that he committed the offense. Because R.C. 2903.04(B) cannot constitutionally be applied to a set of facts where the offender has caused the death of another as a result of the commission of a strict liability minor misdemeanor unless the commission of that minor misdemeanor is, in fact, accompanied by a culpable mental state, that mental state becomes, by operation of constitutional law, an essential element of the offense. Campbell may not be brought to trial on that charge unless a grand jury returns an indictment that includes the required mental culpability state. In our view, the trial court properly determined that count one of the indictment in this case was constitutionally deficient, and properly dismissed it.

## B

In his appellate brief, defendant-appellee Campbell claims that R.C. 2903.04 also violates the Equal Protection Clause of the United States Constitution. Campbell directs our attention to language by the Supreme Court of Ohio, which provides:

"[I]f the statutes prohibit identical activity, require identical proof, and yet impose different penalties, then sentencing a person under the statute with the higher penalty violates the Equal Protection Clause." *State v. Wilson* (1979), 58 Ohio St.2d 52, 55–56, 12 O.O.3d 51, 54, 388 N.E.2d 745, 748.

Campbell claims that the vehicular homicide statute and the involuntary manslaughter statute, predicated on a strict liability traffic violation, prohibit identical activity, require identical proof, and yet impose different penalties. As a result, Campbell suggests that he could not be convicted of involuntary manslaughter without violating the Due Process Clause.

As we have already discussed, vehicular homicide proscribes negligent conduct in operating a vehicle resulting in death. Involuntary manslaughter requires an underlying criminal offense, which, in certain culpable misdemeanors identified by the Supreme Court of Ohio in *Collins,* 67 Ohio St.3d at 117, 616 N.E.2d at 225–226, may emanate from strict liability. Although there is some overlap between the two statutes depending upon the factual circumstances to which they are applied, this alone does not violate the Equal Protection Clause. Instead, the doctrine of allied offenses of similar import protects Campbell from the simultaneous application of the two similar statutes. As the Supreme Court of Ohio has already held, a defendant may be charged with both vehicular homicide and involuntary manslaughter and tried on both, but upon his conviction may be sentenced for only one of the offenses. *State v. Chippendale* (1990), 52 Ohio St.3d 118, 122, 556 N.E.2d 1134, 1137–1138. Accordingly, we reject Campbell's

argument that R.C. 2903.04(B) violates the Equal Protection Clause of the United States Constitution.

## C

In conclusion, although we do not find R.C. 2903.04(B) to be inherently unconstitutional, or to be unconstitutional on its face, we conclude that it may not be used to support an indictment that fails to allege a mental culpability state, because to do so would, in the event of a conviction, work an imposition of a degree of punishment that is disproportionate to the gravity of the offense.

Where the state seeks to charge a person with involuntary manslaughter as a proximate result of that person's committing a strict liability minor misdemeanor, the grand jury must find and allege not only that the person committed the minor misdemeanor, but also that the person did so with a culpable mental state of at least "criminal negligence," as defined at R.C. 2901.22(D).

## III

In light of the foregoing, we hold that the trial court did not err by dismissing Count One of the indictment because the grand jury did not specifically find probable cause to believe that Campbell, as a result of a lapse from due care in his commission of a traffic offense, failed to perceive or to avoid a risk that his conduct might cause a certain result or might create certain dangerous circumstances. The state may, of course, seek to reindict Campbell if it concludes that it can persuade a grand jury to so find.

The state's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF and FREDERICK N. YOUNG, JJ., concur.