OPINION
{¶ 1} Appellant Timothy M. Wamsley appeals his conviction and four-year prison sentence on one count of aggravated burglary. Appellant allegedly broke down the door to his girlfriend's apartment and then attacked her. Appellant argues that the trial court failed to properly instruct the jury as to the full definition of a criminal trespass, which is one of the elements of aggravated burglary as set forth in R.C. § 2911.11. We agree that the trial court's failure to give a complete instruction on criminal trespass was prejudicial error in this case. For this reason, the judgment of the Columbiana County Court of Common Pleas is hereby vacated and the case is remanded for retrial.
 HISTORY OF THE CASE {¶ 2} On the afternoon of May 29, 2004, Janet Sue Stoddard called the police to have them remove Appellant from her apartment at 800 Dresden Avenue in East Liverpool, Ohio. East Liverpool Patrolman Patrick Wright responded to the call, and Ms. Stoddard told him that Appellant had already left. (Tr., p. 43.) At about 10:00 p.m., Patrolman Wright was again called to Ms. Stoddard's apartment. When he arrived he saw two people standing near the entrance to her apartment, and he heard a woman screaming for help. (Tr., p. 44.) Ms. Stoddard's landlord, Ronald Scott, was at the scene, and he heard the victim scream, "he's trying to kill me." (Tr., p. 64.) Patrolman Wright saw Appellant coming down the steps from the apartment, and immediately arrested him. (Tr., p. 47.) The patrolman also saw Ms. Stoddard coming down the stairs. Her face and hair were covered with blood. (Tr., p. 47.) He asked the victim what had happened, and she said that Appellant had broken into the apartment and "kicked the hell out of me." (Tr., p. 48.)
 {¶ 3} Patrolman Wright called an ambulance, and accompanied Ms. Stoddard back into her apartment to wait. He found that the front wooden door had been shattered and the lock had been broken. (Tr., p. 49.) Mr. Scott, the victim's landlord, testified that he saw Appellant forcefully enter the apartment by hitting the door with his shoulder. (Tr., p. 67.)
 {¶ 4} Patrolman Wright found the apartment in disarray, and saw that the television and dresser in her bedroom had been knocked over. (Tr., p. 49.) He took photographs of the scene, which showed blood on the bedroom curtains, sheets and pillows. (Tr., State's Exh. 2.)
 {¶ 5} Once the ambulance arrived, the victim was treated by Marty K. Thorn, III, an EMT. Ms. Stoddard told him that she was attacked by her ex-boyfriend. (Tr., p. 80.) Mr. Thorn found that Ms. Stoddard had been struck on her upper back and on the back of her head. A flap of skin was loose and bleeding from the back of her head. (Tr., p. 77.) It appeared to Mr. Thorn that the victim had been kicked in the head and choked. (Tr., p. 82.) At some point, Ms. Stoddard lost consciousness, and she was taken to the hospital. Ms. Stoddard was treated at the hospital for a gash in her head. (Tr., p. 99.)
 {¶ 6} Appellant was indicted on June 24, 2004, on one count of aggravated burglary, a first degree felony, as set forth in R.C. § 2911.11(A)(1). The case proceeded to jury trial on December 7, 2004. At trial, the prosecutor called Ms. Stoddard to testify as a hostile witness, and her testimony at trial recanted to some degree a number of previous statements she had made. Ms. Stoddard testified that she and Appellant had been in an "on and off" romantic relationship for about six years. (Tr., p. 94.) She rented the apartment at 800 Dresden Avenue on her own because she was having problems with her relationship with Appellant. (Tr., p. 95.) She alone paid the rent for the apartment. (Tr., p. 95.) She testified that Appellant was not welcome at her Dresden Avenue apartment; that she had called the police on May 29, 2004, to remove him from the apartment; and that he broke through the door later that evening. (Tr., p. 97.) She admitted calling out for help after Appellant broke into the apartment. (Tr., p. 98.) She also testified that Appellant said: "See what Richard did to me? Now, you're gonna get yours." (Tr., p. 102.) Richard Stoddard is the victim's ex-husband. He had been in a fistfight with Appellant at about 9:00 p.m. on May 29, 2004. (Tr., p. 115.) Mr. Stoddard hit Appellant once and knocked him out. (Tr., p. 115.)
 {¶ 7} According to Stoddard's testimony, she and Appellant had lived together continuously for six and one-half years prior to her renting the Dresden Avenue apartment. (Tr., p. 103.)
 {¶ 8} Ms. Stoddard testified that she was awakened on May 29th by two loud thumps, after which she heard someone coming into the house. (Tr., p. 105.) She was frightened and started yelling. She turned around, saw a figure in the dark, and kicked the person in the chest. (Tr., p. 105.) She stated that she could not see that it was Appellant. (Tr., p. 105.) The person grabbed her by the shirt and hair. She tried to kick him again, but ended up kicking her dresser instead. She lost her balance and fell, hitting her head on the nightstand. (Tr., p. 106.) The dresser flipped over, causing the television and videotape player to fall on top of her. She testified that Appellant did not kick her. (Tr., p. 106.)
 {¶ 9} Ms. Stoddard testified that Appellant never had a key to her Dresden Avenue apartment, but that he knew where an outside key was hidden. (Tr., pp. 102-103.) Appellant had slept at her apartment four or five nights prior to the night of the crime. (Tr., p. 104.) Ms. Stoddard stated that she had removed the hidden key on May 29, 2004, because she was angry with Appellant, and she did not want him in the apartment. (Tr., p. 103.) She stated that Appellant had never lived with her at the Dresden Avenue apartment. (Tr., p. 109.) She also stated that she still loved Appellant. (Tr., p. 109.)
 {¶ 10} Ronald Scott, who was the landlord of the Dresden Avenue apartment, testified that Ms. Stoddard lived there alone under a verbal lease agreement. (Tr., p. 57.) He stated that Appellant did not ever pay rent for the apartment, that Appellant had been removed from the apartment once or twice, and that he told Ms. Stoddard that Appellant was not permitted to be in the apartment. (Tr., pp. 58-59.) He told Ms. Stoddard that she would have to leave the apartment if Appellant continued to visit. (Tr., p. 73.)
 {¶ 11} Mr. Scott testified that, on the night of the crime, he was at his home, which is near the Dresden Avenue apartment. He heard screaming in the neighborhood and immediately drove to the Dresden Avenue apartment. (Tr., p. 62.) He testified that he saw Appellant abruptly enter the apartment by hitting the door with his shoulder. He then heard Ms. Stoddard screaming and later saw Appellant leaving the apartment. (Tr., pp. 63-64, 67.) Mr. Scott stood at the bottom of the stairs to prevent Appellant from leaving, and he stated that Appellant, "was irate, very upset." (Tr., p. 66.) It was at this time that the police arrived.
 {¶ 12} The jury found Appellant guilty of aggravated burglary. A sentencing hearing was held on February 25, 2005. The sentencing entry was filed on February 28, 2005, and the trial court sentenced Appellant to four years in prison for the first degree felony crime. This timely appeal was filed on March 23, 2005. Appellant presents five assignments of error in this appeal. Appellant's third assignment of error is dispositive.
 ASSIGNMENT OF ERROR NO. THREE {¶ 13} "THE TRIAL COURT ERRED WHEN IT OMITTED FROM THE JURY INSTRUCTIONS THE CULPABLE MENTAL STATE NEEDED FOR THE TRESPASS ELEMENT OF AGGRAVATED BURGLARY, THE DEFINITION OF AN OCCUPIED STRUCTURE, THE DEFINITION OF CAUSE OR ATTEMPT TO CAUSE PHYSICAL HARM, AS WELL AS THE DEFINITIONS OF THE ELEMENTS REQUIRED TO ESTABLISH THE UNDERLYING CRIMINAL OFFENSE OF ASSAULT THEREBY DENYING DEFENDANT/APPELLANT HIS RIGHTS TO DUE PROCESS."
 {¶ 14} Appellant argues that the failure of the trial court to instruct the jury as to certain elements of the crime of aggravated burglary constitute structural and reversible error. Although Appellant's actual presentation of this assignment of error is very brief, it raises the most significant issues in this appeal. We will deal with each alleged error in the jury instructions in turn.
 A. Failure to instruct on the culpable mental state for trespass. {¶ 15} Appellant first argues that, as part of an aggravated burglary charge, the trial court must also instruct the jury as to the essential elements of the crime of trespass. Aggravated burglary is defined in R.C. § 2911.11.(A)(1) as follows:
 {¶ 16} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 17} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 {¶ 18} The definition of criminal trespass is set forth in R.C. § 2911.21.(A)(1):
 {¶ 19} "(A) No person, without privilege to do so, shall do any of the following:
 {¶ 20} "(1) Knowingly enter or remain on the land or premises of another;
 {¶ 21} "(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard;
 {¶ 22} "(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;
 {¶ 23} "(4) Being on the land or premises of another,negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either." (Emphasis added.)
 {¶ 24} The four culpable mental states are defined in R.C. §2901.22, which indicates that a crime may be committed purposely, knowingly, recklessly, or negligently. The criminal trespass statute, supra, describes a variety of types of trespass that can be committed knowingly, recklessly, or negligently, depending on the facts of the crime. In this case, the trial court instructed the jury concerning trespass as follows: "To trespass means that a person enters onto the land or the premises of another without privilege to do so." (Tr., p. 154.) The court seemed to be tracking the language of R.C. § 2911.21(A)(1), except that the instruction fails to state that the crime must be committed "knowingly," which is defined in R.C. § 2901.22(B):
 {¶ 25} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 26} Appellant contends that this omission by the trial court is a due process violation because the jury could not have found him guilty beyond a reasonable doubt of all the elements of the crime if the trial court did not tell the jury exactly what constitutes all the elements of the crime. Appellant also contends that, even though his attorney did not object to this omission in the jury instruction, the error is harmful, prejudicial, and constitutes plain error.
 {¶ 27} Appellee asserts in rebuttal, without any support, that the culpable mental state for trespass is not one of the elements of aggravated burglary, even though the definition of aggravated burglary includes the requirement that a trespass has taken place. Appellee is clearly incorrect in this assertion. The crime of criminal trespass, described in R.C. § 2911.21, does include a culpable mental state, as explained above. A very long list of cases indicate that the reference to "trespass" in the criminal statutes defining the related crimes of aggravated burglary, burglary, and breaking and entering, refers to a criminal trespass as defined by R.C. § 2911.21. See, e.g., Statev. O'Neal (2000), 87 Ohio St.3d 402, 408, 721 N.E.2d 73; Statev. Lilly (1999), 87 Ohio St.3d 97, 102, 717 N.E.2d 322; Statev. Powell (1991), 59 Ohio St.3d 62, 63, 571 N.E.2d 125; Statev. Barksdale (1983), 2 Ohio St.3d 126, 127, 443 N.E.2d 501;State v. Murray, 11th Dist. No. 2003-L-045, 2005-Ohio-1693, ¶ 58 (holding that one of the essential elements of burglary is trespass, and that a trespass signifies that the defendant knowingly entered the property without privilege); State v.Hernandez (June 11, 1999), 7th Dist. No. 97 C.A. 201.
 {¶ 28} The commentary to the Ohio Jury Instructions states that the trial court is required to instruct the jury on the elements of trespass as part of the instructions for aggravated burglary:
 {¶ 29} "Trespass is an element of the offense of aggravated burglary. A trespass can be committed with a knowing, reckless or negligent culpable mental state. See R.C. 2911.21. The court must instruct on the elements of trespass including the appropriate culpable mental state as indicated by the facts of the case." 4 Ohio Jury Instructions (2005) 386, Section 511.11.
 {¶ 30} The Ohio Supreme Court has held that, "[j]ury instructions that effectively relieve the state of its burden of persuasion violate a defendant's due process rights." State v.Adams, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 97, citing Sandstrom v. Montana (1979), 442 U.S. 510,99 S.Ct. 2450, 61 L.Ed.2d 39.
 {¶ 31} Appellant correctly argues that the jury must be instructed on all the elements of criminal trespass when the crime charged is aggravated burglary. Since the definition of criminal trespass contains a culpable mental state, that mental state is one of the essential elements of criminal trespass, and by extension, one of the elements of aggravated burglary. Statev. Campbell (1997), 117 Ohio App.3d 762, 773, 691 N.E.2d 711. This is such an obvious conclusion that it is rarely discussed in the caselaw as anything other than an established principle.
 {¶ 32} In the instant case though, Appellant's counsel did not object to the jury instructions. Generally speaking, a failure to object to a trial error waives all but plain error on appeal. State v. Underwood (1983), 3 Ohio St.3d 12,444 N.E.2d 1332, syllabus. "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." Underwood, supra, 3 Ohio St.3d 12,444 N.E.2d 1332, at syllabus.
 {¶ 33} Appellant contends that the error is of such magnitude that the plain error rule should be invoked. To constitute plain error, the error must be obvious on the record, and the error must be so fundamental that it should have been apparent to the trial court without objection. State v. Tichon (1995),102 Ohio App.3d 758, 658 N.E.2d 16. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. The decision to conduct a plain error review is discretionary with the reviewing court. State v.Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, at ¶ 62.
 {¶ 34} In State v. Adams (1980), 62 Ohio St.2d 151,404 N.E.2d 144, ¶ 2 and 3 of syllabus, the Ohio Supreme Court has left open the possibility that a trial court's failure to instruct the jury on all the elements of an offense might not necessarily be reversible as plain error in some cases:
 {¶ 35} "2. Failure of a trial court to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged does not per se
constitute plain error under Crim.R. 52(B).
 {¶ 36} "3. Where a trial court's failure to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged is asserted to be plain error under Crim.R. 52(B), the reviewing court must examine the record in order to determine whether that failure may have resulted in a manifest miscarriage of justice. (State v. Long,53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus, approved and followed.)"
 {¶ 37} In Adams, the trial court failed to instruct the jury on the culpable mental state for child endangerment, as set forth in R.C. § 2919.22. The child endangerment statute, though, does not actually specify a culpable mental state. When a criminal statute does not specify a culpable mental state, and when there is no clear intent to impose strict liability for a violation of the statute, it is presumed that proof of recklessness is required as one of the elements of the crime. R.C. § 2901.21(B). Thus, the culpable mental state of recklessness is required to establish child endangerment.
 {¶ 38} The trial court in Adams failed to instruct the jury on the essential element of recklessness. In discussing this error of the trial court, Adams held: "As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged, and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error." (Footnotes omitted) Id. at 153. The Adams Court further opined that if the defendant did not propose any jury instructions and did not object when the instructions were given to the jury, then the error should be reviewed for plain error. Id.
 {¶ 39} The Adams Court determined that there was no plain error in the faulty jury instructions because the defendant's culpable mental state was never at issue during trial. Adams,
supra, at 155. In Adams, the defendant argued at trial that he was not at the scene of the crime and that someone else must have committed it, and he did not challenge the state's evidence that the victim had been subjected to severe and repeated beatings. Id. The Adams Court concluded that there was no manifest injustice in the faulty jury instructions because no jury could have found that the crime was the result of mere negligence, rather than recklessness. Id. Thus, under a plain error analysis, the Adams Court concluded that the error was not reversible error.
 {¶ 40} In the instant case, by way of contrast, Appellant's culpable mental state with respect to the trespass was an issue at trial. One of the defenses Appellant raised at trial was that he could not have committed a trespass because the Dresden Avenue apartment was, in effect, his apartment. (Tr., p. 137.) Considerable evidence was presented concerning Appellant's prior access to the Dresden Avenue apartment, whether he had a key, whether he paid rent, how often he stayed there, and his prior living arrangements with the victim. There was also evidence that the victim called the police to have him removed from the apartment just a few hours prior to the time of the crime, and that she had removed the outside key because she was angry with Appellant. These and other facts relate both to Appellant's privilege to be in the apartment and whether he "knowingly" committed a trespass by entering the apartment that he claimed to have believed was in some respect his apartment. Since Appellant's culpable mental state was an issue at trial, this case can be distinguished from the situation that occurred inAdams.
 {¶ 41} Only one Ohio appellate case specifically discusses the type of error alleged by Appellant, i.e., whether it is plain error for the trial court to fail to instruct the jury on the culpable mental state for criminal trespass as an element of aggravated burglary. That case is State v. Smith (Jan. 20, 1989), 11th Dist. No. 1720. The defendant in Smith was convicted of aggravated burglary, attempted rape, and assault. The Smith appeal involved, in part, the precise issue that is under review in this assignment of error:
 {¶ 42} "In his eighth assignment of error, appellant argues that he was denied due process of law because the trial court failed to instruct the jury as to the culpable mental state needed for the trespass element of aggravated burglary. As discussed earlier, appellant did not object to the jury instructions; however, appellant now argues that this was `plain error.'" Smith at *12.
 {¶ 43} The Smith opinion reasoned that a criminal defendant has a due process right that requires the state to prove every element of the crime beyond a reasonable doubt, citing In reWinship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. Inre Winship held that:
 {¶ 44} "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Id. at 364.
 {¶ 45} In Smith, the Eleventh District examined the jury instructions and found that the trial court did not instruct the jury as to the culpable mental state for criminal trespass.Smith relied upon two federal cases from the Sixth Circuit Court of Appeals that held that a failure to instruct the jury on an essential element of the crime violates the principles set forth in In re Winship and constitutes automatic reversible error, whether or not there was an objection at trial. Hoover v.Garfield Heights Mun. Ct. (C.A.6, 1986), 802 F.2d 168, certiorari denied (1987), 480 U.S. 949, 107 S.Ct. 1610,94 L.Ed.2d 796; Glenn v. Dallman (C.A.6, 1982), 686 F.2d 418; see also United States v. Howard (C.A.2, 1974), 506 F.2d 1131. TheSmith court, relying on these authorities, held that the error was plain error, and the judgment was reversed.
 {¶ 46} Just as occurred in the instant case, the defendant's counsel in the Smith case failed to object to the erroneous jury instruction. In Smith, the Eleventh District Court of Appeals held that a failure to instruct the jury on an essential element of the crime is such a fundamental constitutional error that prejudice must be presumed and the judgment must be reversed as plain error. Id. at *9. The Smith opinion seems to be describing what is now referred to as a "structural error," referring to a rare type of constitutional error, "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante
(1991), 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302; see also, Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824,17 L.Ed.2d 705. A structural constitutional error is presumed to be harmful and prejudicial error, and requires automatic reversal of the judgment. State v. Martin, 103 Ohio St.3d 385,2004-Ohio-5471, 816 N.E.2d 227, ¶ 53.
 {¶ 47} It would appear that the federal appellate cases governing Ohio specifically hold that it is a structural error to fail to instruct the jury on all the essential elements of the crime, and that such cases are automatically reversible under habeas review. The Sixth Circuit Court of Appeals came to this conclusion in Hoover, supra, 802 F.2d 168:
 {¶ 48} "* * * Because the jury was not instructed on the element of lawful arrest, it did not find beyond a reasonable doubt `every fact necessary' to establish every element of resisting arrest. This violation of due process cannot be considered harmless error.
 {¶ 49} "In sum, we conclude that the failure to instruct the jury on an essential element of the crime charged is one of the exceptional constitutional errors to which the Chapman harmless error analysis does not apply." (Emphasis sic.) Id. at 178.
 {¶ 50} Hoover involved a federal habeas challenge to a state court conviction for resisting arrest. Based on the Sixth Circuit's analysis, the state court conviction was reversed because the jury was not instructed as to the definition of a lawful arrest.
 {¶ 51} The Hoover holding was reaffirmed (albeit rather unenthusiastically) by the Sixth Circuit in United States v.Dotson (C.A.6, 1990), 895 F.2d 263. The Hoover and Dotson
holdings remain the law in the Sixth Circuit Court of Appeals.
 {¶ 52} We are aware that Ohio's state courts, "are not bound by rulings on federal statutory or constitutional law made by a federal court other than the United States Supreme Court." Statev. Burnett (2001), 93 Ohio St.3d 419, 424, 755 N.E.2d 857. Nevertheless, the fact that the Sixth Circuit has reversed state court convictions in federal habeas proceedings based on the precise type of trial error that occurred in the instant case should be treated as very significant persuasive authority.
 {¶ 53} Many of Ohio's appellate districts agree that a failure to instruct the jury as to one of the essential elements of the crime requires reversal, whether as plain error or as automatically reversible structural error. State v. Reyes, 6th Dist. No. WD-03-059, 2005-Ohio-2097; State v. Stacy, 12th Dist. No. CA2002-03-073, 2003-Ohio-4752; State v. Collins (1993),88 Ohio App.3d 291, 295, 623 N.E.2d 1269 (2nd District); State v.Stephenson (Aug. 7, 1991), 9th Dist. No. 90CA004942. The following analysis from the Stacy case, issued by the Twelfth District Court of Appeals, is instructive:
 {¶ 54} "We find that the trial court's failure to instruct the jury on every essential element of the offense * * * was plain error under Crim.R. 52(B). The trial court's instructions effectively deprived appellant of his right to have the jury properly instructed of the crime for which he was actually being tried, and the essential elements of that crime. The trial court's error is not corrected simply because a reviewing court is satisfied after the fact of a conviction that sufficient evidence existed that the jury would or could have found that the state proved the missing element had the jury been properly instructed; the constitutional right to a jury places the burden on the state of proving the elements of a crime to the jury's satisfaction, not to the satisfaction of the reviewing court."Stacy, supra, 2003-Ohio-4752, at ¶ 7.
 {¶ 55} It would appear from the numerous authorities cited above that failure to instruct the jury on all the elements of the crime is a type of fundamental error that satisfies the requirements of the plain error rule and, in the vast majority of cases, necessitates a reversal of the judgment. Martin, supra,103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶ 53. For all these reasons, we sustain Appellant's third assignment of error and hold that, under the facts of this case, the failure of the trial court to instruct the jury on the culpable mental state for criminal trespass as part of the definition of the crime of aggravated burglary warrants reversal.
 B. Failure to define "occupied structure." {¶ 56} Appellant argues that the trial court did not provide a further definition of "occupied structure," which is one of the elements of aggravated burglary. Appellee, however, is correct that jury instructions should be viewed as a whole, and any error or omission should be interpreted in the context of the entire jury charge. State v. Madrigal (2000), 87 Ohio St.3d 378, 396,721 N.E.2d 52. Furthermore, "[i]n charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict." R.C. § 2945.11. Appellant did not object to any of the jury instructions, so any error would need to satisfy the requirements of the plain error rule as explained earlier. Appellant contends that one of the elements of aggravated burglary is that the crime occurred in an "occupied structure," which is specifically defined in R.C. § 2909.01(C):
 {¶ 57} "(C) `Occupied structure' means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
 {¶ 58} "(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.
 {¶ 59} "(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.
 {¶ 60} "(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.
 {¶ 61} "(4) At the time, any person is present or likely to be present in it."
 {¶ 62} The aggravated burglary statute itself states that: "`Occupied structure' has the same meaning as in section 2909.01
of the Revised Code." See R.C. § 2911.11(C)(1). The court instructed the jury that it must find that Appellant, "did trespass in an occupied structure being the residence of Janet Stoddard, located at 800 Dresden Avenue[.]" (Tr., p. 153.) Since the specific occupied structure was identified as the residence of Ms. Stoddard, it is unlikely that a further definition of occupied structure would have materially affected the outcome of the trial. In addition, terms of common usage need not be defined for the jury. State v. Riggins (1986), 35 Ohio App.3d 1, 8,519 N.E.2d 397. Since it is clear that Ms. Stoddard's apartment satisfies the requirements of being an occupied structure, and since the jury was told that the specific occupied structure in question was her apartment, there is no material harm in the trial court's failure to give an additional definition of occupied structure.
 C. Failure to define "physical harm." {¶ 63} Appellant contends that the trial court failed to specifically define the phrase, "the offender inflicts, or attempts or threatens to inflict physical harm on another." This phrase corresponds to the aggravating circumstance in aggravated burglary, as set forth in R.C. § 2911.11(A)(1). Appellant does not point to any section of the Ohio Revised Code that defines this phrase. As stated above, terms of common usage need not be defined for the jury. Riggins, supra, 35 Ohio App.3d at 8,519 N.E.2d 397. Without some indication from Appellant as to how this phrase should have been further defined, it is apparent that the jury was free to apply the common usage of the words, and there was no error in the trial court's jury instruction regarding the instruction as to the aggravating circumstances of the crime.
 D. Failure to define the underlying crime of assault. {¶ 64} Appellant contends that a conviction for aggravated burglary requires proof that the defendant had the criminal state of mind to commit some offense while trespassing in an occupied structure. R.C. § 2911.11 states: "No person * * * shall trespass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense * * *." It is clear from the record that the trial court did not instruct the jury concerning any underlying offense, but rather, simply gave them the statutory definition of aggravated burglary.
 {¶ 65} The Ohio Jury Instructions state that when instructing the jury concerning aggravated burglary, the trial court is also required to instruct the jury on the elements of the underlying offense:
 {¶ 66} "The court must instruct the jury on the elements of the underlying criminal offense together with the meaning of pertinent words and phrases." 4 Ohio Jury Instructions (2005) 386, Section 511.11.
 {¶ 67} The specific type of underlying criminal offense is not defined in the aggravated burglary statute, but the statute does require proof beyond a reasonable doubt of a culpable mental state for some underlying offense to support a conviction for aggravated burglary. The relationship of the underlying offense to the aggravated burglary charge instructions is discussed very little in caselaw. The only appellate case that could be found that discusses this issue to any degree is State v. Dimitrov
(Feb. 15, 2001), 8th Dist. No. 76986. Dimitrov involved a burglary charge, and as part of the jury instructions, the trial court explained that any criminal offense, including theft, could constitute the underlying offense to support the burglary charge.Dimitrov held that the trial court does not need to specifically identify the underlying crime as part of the jury instructions, at least in some circumstances. In Dimitrov,
although the trial court did not set forth the elements of any particular underlying crime, the court did explain what the jury needed to find:
 {¶ 68} "Now, I haven't defined any criminal offense but you can use your common sense of theft. Anything can be a criminal offense, anything. Theft is sufficient here to find in this case (sic). If you find the State proved, beyond a reasonable doubt, all the essential elements of the offense of burglary as charged in count one of the indictment, your purpose (sic) must be guilty according to your finding." Id. at *2.
 {¶ 69} The Eighth District Court of Appeals found that this instruction gave the jury enough information to determine the, "purpose to commit * * * any criminal offense" element of burglary. Id.
 {¶ 70} It appears that the trial court's instruction in the instant case does not meet even the minimal requirements set forth in Dimitrov. In the Dimitrov case, the trial court at least explained that a theft crime would satisfy the, "purpose to commit * * * any criminal offense," aspect of burglary. In the instant case, there is no direction at all from the trial court as to how the jury should consider the underlying offense, or what that offense might be. Thus, pursuant to our earlier discussion, it would appear that this deficiency in the jury instruction also supports a reversal of the trial court judgment.
 {¶ 71} For the reasons cited earlier, this third assignment of error is sustained.
 {¶ 72} Appellant's remaining assignments of error are as follows:
 {¶ 73} "DEFENDANT/APPELLANT'S CONVICTION FOR AGGRAVATED BURGLARY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE STATE FAILED TO PROVE THE OFFENSE OF TRESPASS WHICH IS A REQUIRED ELEMENT OF THE OFFENSE OF AGGRAVATED BURGLARY."
 {¶ 74} "DEFENDANT/APPELLANT'S CONVICTION FOR AGGRAVATED BURGLARY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE STATE FAILED TO PROVE THE OFFENSE OF TRESPASS WHICH IS A REQUIRED ELEMENT OF THE OFFENSE OF AGGRAVATED BURGLARY."
 {¶ 75} "DEFENDANT/APPELLANT'S CONVICTION OF AGGRAVATED BURGLARY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE STATE FAILED TO PROVE THE UNDERLINING CRIMINAL OFFENSE (OF ASSAULT) WHICH IS A REQUIRED ELEMENT OF THE OFFENSE OF AGGRAVATED BURGLARY."
 {¶ 76} "THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF BURGLARY IN VIOLATION OF OHIO REVISED CODE SECTION 2911.12(A)(4), A FELONY OF THE FOURTH DEGREE."
 {¶ 77} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE ELEVEN [sic] ASSIGNMENTS OF ERROR AS SET FORTH HEREIN."
 {¶ 78} Since the conviction and sentence are vacated pursuant to Appellant's third assignment of error, the remaining assignments of error are rendered as moot.
 CONCLUSION {¶ 79} Based on the fact that the trial court failed to instruct the jury on all the essential elements of the offense of aggravated burglary, Appellant was denied his constitutional right of due process, and this constitutes plain error. Appellant's third assignment of error is sustained. The judgment of conviction and sentence for one count of aggravated burglary rendered by the Columbiana County Court of Common Pleas is vacated and the case is remanded.
Vukovich, J., concurs.
DeGenaro, J., dissents; see dissenting opinion.