OPINION
{¶ 1} Defendant, Turell Justice, appeals from his conviction and sentence for aggravated burglary.
 {¶ 2} On April 25, 2005, at approximately 9:00 p.m., Ebony Lee called Reginald Gardner, asking to purchase marijuana. Lee waited for Gardner on Lee's back porch at 1024 Danner Avenue in Dayton. When Gardner arrived, he was accompanied by Defendant Justice. Lee had known both Gardner and Justice for several years. Shortly after the two men arrived, they began arguing about a recent theft of some of Gardner's drugs.
 {¶ 3} The argument escalated, and Lee's boyfriend, James Pippins, came outside to investigate whether the two men were yelling at Lee. When Pippins challenged Gardner and Justice, Gardner became angry and began shouting at Pippins, threatening him. Lee told the two men to just forget the marijuana, that she didn't want it, and that they were not welcome in her home.
 {¶ 4} Pippins and Gardner continued exchanging words after Pippins went back inside the house. Gardner pushed past Lee, shoving her out of the way, entered the home, and immediately attacked Pippins by swinging at him. A physical fight ensued. After Pippins slammed Gardner to the floor and began getting the best of him, Justice, who had entered the home after Gardner, tried to intervene in the fight but was prevented from doing so by Lee. At that point, Justice pulled out a gun and pointed it at Pippins, who had Gardner down on the floor. The fighting ceased.
 {¶ 5} More words were exchanged between Gardner and Pippins, and when Gardner called Lee a bitch, Pippins hit Gardner in the mouth. At that point, Justice again pointed his gun at Pippins and threatened to kill him. Justice persuaded Gardner to leave the home, telling him that they would kill Pippins later, elsewhere in the neighborhood. Justice and Gardner then left, and Lee called the police.
 {¶ 6} Police arrived on the scene a short time later, and after taking a report they left to look for the suspects. As Lee was preparing to leave her home for a few days, because she feared Gardner and Justice might return, a group of seven or eight people, including Gardner and Justice approached Lee's back door. Lee, her children, her cousin, and her mother were inside a car in the parking lot. Pippins was still inside the house.
 {¶ 7} Lee overheard Gardner and Pippins exchanging words, and then saw Gardner kick in Lee's back door. Gardner entered Lee's home and chased Pippins out the front door. Meanwhile, the group at the back of Lee's house ran around to the front of the house. Lee's cousin, who was driving the car in which Lee and her family were passengers, pulled the car out onto Danner Avenue, and from that vantage point Lee observed Justice fire five or six shots at Pippins as he fled. Lee's neighbor, Laquita Hart, observed Gardner also shooting at Pippins.
 {¶ 8} On May 18, 2005, Justice was indicted on one count of aggravated burglary, R.C. 2911.11(A)(2), and one count of felonious assault, R.C. 2903.11(A)(2). A three year firearm specification, R.C. 2941.145, was attached to both charges. Justice was found guilty following a jury trial of aggravated burglary and the accompanying firearm specification. Justice was found not guilty of felonious assault. The trial court sentenced Justice to three years in prison for aggravated burglary plus an additional and consecutive three years on the firearm specification, for a total of six years.
 {¶ 9} Justice timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 10} "APPELLANT'S CONVICTIONS FOR AGGRAVATED BURGLARY, AND THE GUN SPECIFICATION ASSOCIATED WITH THE AGGRAVATED BURGLARY, ARE AGAINST THE SUFFICIENCY AND/OR MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v.Jenks (1991), 61 Ohio St.3d 259:
 {¶ 12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 13} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 14} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins, supra.
 {¶ 15} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In Statev. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 16} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 17} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 18} As it relates to this case, R.C. 2911.11(A)(2), which defines the offense of aggravated burglary, provides in relevant part:
 {¶ 19} "(A) No person by force, stealth, or deception, shall trespass in an occupied structure . . . when another person other than the accomplice of the offender is present, with purpose to commit in the structure . . . any criminal offense, if any of the following apply:
 {¶ 20} "(1) The offender . . . threatens to inflict physical harm on another;
 {¶ 21} "(2) The offender has a deadly weapon . . . on or about his person."
 {¶ 22} The firearm specification, R.C. 2941.145, required the State to prove that while committing the aggravated burglary offense, Justice had a firearm on or about his person and displayed the firearm or used it to facilitate the offense.
 {¶ 23} If a person acting with the kind of culpability required for the offense aids or abets another in committing the offense, that person is guilty of complicity and may be prosecuted and punished the same as the principal offender. R.C.2923.03(A)(2), (F). Aid or abet means to support, help, assist, cooperate with or encourage. State v. Johnson,93 Ohio St.3d 240, 2001-Ohio-1336.
 {¶ 24} The evidence presented by the State, when viewed in a light most favorable to it, demonstrates that after Gardner got into a verbal argument with Pippins and began threatening him, Lee told Gardner and Justice to forget the marijuana, that she didn't want it, and to just leave, and that they were not to enter her home. Nevertheless, when Gardner and Pippins continued exchanging words after Pippins went inside the house, Gardner pushed past Lee, pushing her out of the way, entered the home, and immediately attacked Pippins by swinging at him. A fight ensued. Justice entered the home right behind Gardner and tried to intervene in the fight after Pippins had slammed Gardner to the floor and began getting an advantage over Gardner. Lee interfered, however, with Justice's attempt to get involved in the fight, at which time Justice pulled out a gun and pointed it at Pippins. That ended the fight and resulted in Pippins letting Gardner get up. While still inside that home, Justice pointed his gun a second time at Pippins and threatened to kill him when the confrontation between Gardner and Pippins continued.
 {¶ 25} Viewing this evidence in a light most favorable to the State, a rational trier of facts could find all of the essential elements of aggravated burglary proven beyond a reasonable doubt, or at a minimum that Justice aided and abetted Gardner in committing that offense. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 26} Justice further argues that his conviction is not supported by the manifest weight of the evidence, pointing to the conflicts and inconsistencies in the testimony of the State's eyewitnesses, and the fact that credibility was a vital issue in this case. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts, the jury here, to resolve. State v. DeHass, supra. The jury did not lose its way simply because it chose to believe the State's witnesses, which it had a right to do. Defendant Justice presented no evidence at trial.
 {¶ 27} Reviewing this record as a whole, we cannot clearly find that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 28} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 29} "APPELLANT WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL THROUGH PROSECUTORIAL MISCONDUCT."
 {¶ 30} Justice argues that when during closing argument the prosecutor discussed the principle of aiding and abetting he misstated the law because he failed to mention that the complicitor must have the culpability required for the commission of the offense, the same as the principal offender. Justice further complains that the prosecutor committed misconduct because he failed to correct two inaccurate jury instructions; one defining the elements of aggravated burglary, wherein the court failed to identify the specific underlying offense Justice had a purpose to commit when he trespassed in the occupied structure (Lee's home), the other concerning note taking by the jurors, wherein the court stated that the jurors who chose not to take notes must not be influenced by those jurors who did take notes.
 {¶ 31} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." Statev. Jones, 90 Ohio St.3d 403, 420, 2000-Ohio-187, citing Statev. Smith (1984), 14 Ohio St.3d 13, 14. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See State v. Loza (1994), 71 Ohio St.3d 61, 78,1994-Ohio-409. In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168,106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 32} Generally, prosecutors are entitled to considerable latitude in opening statement and closing argument. State v.Ballew, 76 Ohio St.3d 244, 255, 1996-Ohio-81; State v.Stevens, Montgomery App. No. 19572, 2003-Ohio-6429, ¶ 34. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990), 51 Ohio St.3d 160, 165, quoting State v. Stephens (1970), 24 Ohio St.2s 76, 82. "Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the Defendant has been prejudiced."Stephens, supra, citing Ballew and State v. Lorraine (1993),66 Ohio St.3d 414, 420.
 A. MISSTATEMENT OF THE LAW. {¶ 33} During closing argument the prosecutor explained the principle of aiding and abetting to the jury as follows:
 {¶ 34} "There's an aggravated burglary there committed with a firearm. The judge is going to charge you on aiding and abetting. He's going to tell you aiding and abetting basically means to help or to assist, and what one does, that equally applies to the other, and vice-versa. Remember we talked about that. So what one does, we can apply that to the other; and what the other does, we can apply that to the other one. That's the law in the State of Ohio that you're sworn to accept." (T. 463).
 {¶ 35} Justice argues that the prosecutor misstated the law of aiding and abetting because he neglected to mention that the aider and abettor (complicitor) must "knowingly" help, assist, or encourage another in committing the offense. In other words, the complicitor must act with the kind of culpability required for the commission of the offense. R.C. 2923.03(A)(2). More specifically, Justice claims that he did not share Gardner's purpose or intent to assault Pippins, and accordingly he was not aiding and abetting Gardner. Intent, however, can and must be inferred from the circumstances surrounding the crime. State v.Johnson, supra.
 {¶ 36} Justice did not object at trial to the portion of the prosecutor's closing argument about which he now complains. Thus, he has waived all claims of error relative thereto except for plain error. State v. Wickline (1990), 50 Ohio St.3d 114;State v. Underwood (1983), 3 Ohio St.3d 12. Plain error does not exist unless but for the error the outcome of the trial would clearly have been different. State v. Long (1978),53 Ohio St.2d 91.
 {¶ 37} A review of this record discloses that the prosecutor told the jurors that the court would instruct them on aiding and abetting. Moreover, the trial court correctly instructed the jury on the law of aiding and abetting. The trial court's instructions, not counsel's statements during closing argument, govern the law to be applied in the case, and it is presumed that the jury will follow the trial court's instructions. State v.Loza (1994), 71 Ohio St.3d 61, 79; State v. Henderson (1988),39 Ohio St.3d 24, 33. No plain error is demonstrated.
 B. FAILURE TO CORRECT INACCURATE JURY INSTRUCTIONS {¶ 38} Justice argues that the prosecutor's failure to correct erroneous jury instructions concerning the elements of aggravated burglary and note taking by the jurors constitutes misconduct. Justice did not object or raise this issue at trial, however. Thus, he has waived all but plain error. Wickline,supra.
 {¶ 39} As for the validity of the court's instructions on aggravated burglary and note taking by the jurors, we shall address that issue in the third assignment of error. As for the allegation of prosecutorial misconduct, we are unaware of any affirmative duty on the part of the prosecutor to correct or bring to the trial court's attention any error in the court's instructions, especially if that alleged error results in prejudice to the defendant and not the State. State v. Breaston
(1993), 83 Ohio App.3d 410. If Justice believed that the trial court's instructions were either misleading or inadequate and prejudiced him, it was incumbent on Justice to timely object. Crim.R. 30(A). The trial court afforded Justice an opportunity to object to the court's instructions out of the jury's hearing, but Justice made no objection. We see no misconduct by the prosecutor in relation to the court's jury instructions, much less any plain error.
 {¶ 40} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 41} "THE TRIAL COURT DEPRIVED APPELLANT OF A FAIR TRIAL AND DUE PROCESS OF LAW BY FAILING TO PROPERLY INSTRUCT THE JURY."
 {¶ 42} A trial court must give jury instructions that provide a correct, clear and complete statement of the law. State v.Condon, 152 Ohio App.3d 629, 2003-Ohio-2335. In this assignment of error, Justice argues that the trial court's jury instructions on aggravated burglary and note taking by the jurors were incorrect and incomplete.
Aggravated Burglary
 {¶ 43} The trial court instructed the jury on aggravated burglary as follows:
 {¶ 44} "Mr. Turell Justice is charged with aggravated burglary in Count One of the indictment. Before you can find Mr. Justice guilty of this offense, you must find beyond a reasonable doubt that on or about April 25, 2005, and in Montgomery County, Ohio, he did, by force, stealth or deception, trespass in an occupied structure, to-wit, a residence located at 1023 Danner, Apartment B, or in a separately secured or separately occupied portion of the occupied structure, when another person other than an accomplice of the offender was present, with the purpose to commit in the structure or the separately secured or separately occupied portion of the structure, any criminal offense, and did have a deadly weapon or dangerous ordnance, that being a handgun, on or about his person or under his control." (Emphasis supplied). (T. 495).
 {¶ 45} The trial court's instruction tracked the language of the aggravated burglary section, R.C. 2911.11(A)(2), which prohibits trespass in an occupied structure with a purpose to commit "any criminal offense" while inside. Justice argues that by failing to specify the underlying criminal offense he had a purpose to commit, the court's instruction permitted the jurors to return a verdict of guilty on a finding that he had a purpose to commit some criminal offense, but without necessarily arriving at a unanimous agreement about what that offense was, depriving Defendant of his due process right to a unanimous verdict required by Crim.R. 31(A). We agree.
 {¶ 46} Justice failed to object at trial to the trial court's jury instruction on aggravated burglary. Thus, for purposes of appellate review Justice has waived all but plain error. Statev. Wickline (1990), 50 Ohio St.3d 114; State v. Parrish
(August 11, 2006), Montgomery App. No. 21206, 2006-Ohio-4161.
 {¶ 47} In State v. Wamsley (Oct. 2, 2006), Columbiana App. No. 05CO11, 2006-Ohio-5303, the court held that the trial court's failure in its jury instructions on aggravated burglary to include any instruction identifying the underlying criminal offense Defendant allegedly had a purpose to commit when he trespassed in the occupied structure constitutes plain error. InWamsley, as in this case, the trial court's instruction on aggravated burglary closely tracked the statutory language in R.C. 2911.11(A), requiring that a person have a purpose to commitany criminal offense in the occupied structure. Neither inWamsley nor in this case, however, did the trial court specify any particular underlying criminal offense the defendant had a purpose to commit or define its elements for the jury.
 {¶ 48} Wamsley pointed out that the standard Ohio Jury Instructions relating to aggravated burglary, Section 511.11, require the trial court to instruct the jury on the elements of the applicable underlying criminal offense. Wamsley also distinguished on its facts the only other case found discussing this issue, State v. Dimitrov (Feb. 15, 2001), Cuyahoga App. No. 76986, 2001-Ohio-4133. Dimitrov held that the trial court did not err when it failed to include in its instructions on burglary an instruction identifying the specific underlying criminal offense that Defendant had a purpose to commit when he trespassed in the occupied structure. Although the trial court did not instruct the jury on the elements of any particular underlying offense, the court in Dimitrov nevertheless stated in its instructions:
 {¶ 49} "Now, I haven't defined any criminal offense but you can use your common sense of theft. Anything can be a criminal offense, anything. Theft is sufficient here to find in this case."
 {¶ 50} The Wamsley court determined that this instruction in Dimitrov explained what the jury needed to find: that theft could constitute the underlying criminal offense, and therefore the instruction gave the jury sufficient information to determine the criminal offense that Defendant had a purpose to commit. The trial court's instruction in this case, like the instruction inWamsley, does not satisfy even the minimal requirements ofDimitrov, because there was no explanation or suggestion by the court as to what crime could constitute the underlying criminal offense that would prove the "purpose to commit . . . any criminal offense" element of aggravated burglary.
 {¶ 51} As it is used in R.C. 2911.11(A), the phrase "any criminal offense" has a dual role. It functions to allow any statutory offense to serve as the underlying offense a trespasser had the purpose to commit. And, it modifies the word purpose to define the nature of that element of the offense of aggravated burglary. In order to find a violation of R.C. 2911.11(A)(1) or (2), the jury must find that the required purpose existed, and in order to make that finding the jury must unanimously agree on the particular underlying offense which the purpose concerned. Therefore, the court's instruction must identify the underlying offense and its elements. If the instruction merely tracks the language of R.C. 2911.11(A) to permit a guilty verdict on a finding of a purpose to commit "any criminal offense," the jury necessarily must speculate on what the underlying criminal offense was.
 {¶ 52} The failure of the trial court in its instructions to the jury to designate and define the elements of the underlying criminal offense Defendant had a purpose to commit constitutes a failure to instruct the jury on all of the essential elements of the offense charged, which violates his right to due process and constitutes reversible error, even in the absence of an objection. Wamsley, supra; State v. Smith (Jan. 20, 1989), Portage App. No. 1720; Hoover v. Garfield Heights Mun. Ct.
(C.A. 6, 1986), 802 F.2d 168; United States v. Dotson (C.A. 6, 1990), 895 F.2d 263. The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. In re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068,25 L.Ed.2d 368. If the jury is not instructed on every essential element of the offense charged, it cannot find beyond a reasonable doubt every fact necessary to constitute the crime charged, and the Winship principle is violated. Hoover,supra.
 {¶ 53} In State v. Griffin (July 15, 2005), Montgomery App. No. 20681, 2005-Ohio-3698, we recognized that the jury's verdict as to which underlying offense Defendant had a purpose to commit for purposes of aggravated burglary must be unanimous, although we held that the failure to give a special unanimity instruction in that regard does not constitute plain error where the court gave a general unanimity instruction, and although the court instructed the jury on alternative underlying offenses that might apply, the evidence was sufficient to support a conviction based upon at least one of them.
 {¶ 54} Because the trial court did not instruct the jury concerning any underlying offense Justice may have had a purpose to commit, and where, as here, the verdict form does not contain a separate finding regarding that matter, the record does not demonstrate that the jury unanimously agreed upon the identity of that underlying offense Justice had a purpose to commit. Under those circumstances, a manifest injustice occurred and plain error exists. State v. Adams (1980), 62 Ohio St.2d 151. Accordingly, the judgment of the trial court will be reversed and this cause remanded for a new trial.
 {¶ 55} Justice also complains about the trial court's jury instruction regarding note taking by the jurors. Justice alleges that this instruction invited those jurors who did not take notes to entirely disregard the court's instruction, "not be influenced by" the opinions of those jurors who did take notes.
 {¶ 56} Once again, Justice failed to object to the trial court's instruction on note taking by the jurors. Accordingly, he has waived all but plain error for purposes of appellate review.Wickline, supra.
 {¶ 57} A review of this record reveals that Justice's claim is a misinterpretation of the meaning of the court's instruction on note taking. The court's instruction on note taking in its entirety provides:
 {¶ 58} "Do not hesitate to change an opinion if convinced that it is wrong. However, you may not surrender honest convictions in order to be congenial or to reach a verdict solely because of the opinion of other jurors.
 {¶ 59} "The Court permitted those jurors who desired to take notes to do so. The taking of notes should not have diverted your attention from what was said or what happened in the courtroom during the trial, since some people believe that the taking of notes distracts a person's attention and interferes with hearing all of the evidence. No juror was required to take notes and this was entirely a matter of personal choice for each juror. The jurors who chose not to take notes must not be influenced by those who did take notes.
 {¶ 60} "The fact that the notes taken by a juror support his or her recollection in no way makes that juror's memory more reliable than that of the jurors who did not take notes. Notes are merely a memory aid and must not take precedence over your independent memory of the facts. You will be allowed to take you notes to the jury room, and all notes will be returned to the bailiff to be destroyed when the jury is discharged." (T. 510-511).
 {¶ 61} When properly viewed in the context of the entire charge, State v. Price (1979), 60 Ohio St.2d 136, the court's instruction did not say that jurors who did not take notes should entirely disregard the opinions of those who did. Rather, the instruction simply indicated that the mere fact that a particular juror took notes should not cause other jurors who did not to give that person's opinion any extra or added weight. We see no error, much less plain error, in the trial court's instruction on note taking.
 {¶ 62} The third assignment of error is sustained in part and overruled in part. Because the trial court committed plain error in its instructions on aggravated burglary as discussed herein, the judgment of the trial court will be reversed and this case remanded for a new trial.
Fain, J. and Donovan, J., concur.