{¶ 101} I write separately for many reasons. First, I concur in the majority's resolution of appellant's first assignment of error, but cannot agree with the majority's citation to State v. Madden, 10th Dist. No. 04AP-1228, 2005-Ohio-4281, when resolving that assignment of error. Second, I disagree with the majority's resolution of appellant's second assignment of error since the trial court's instruction, when read as a whole, instruct the jury on every essential element of the offenses with which appellant was charged. Finally, I conclude that trial counsel was *Page 17 
ineffective for not moving to suppress a handgun received from the home, which disagrees with the majority's resolution of this argument. However, since both the majority and I believe this case should be remanded for further proceedings, I must concur in its ultimate judgment.
 {¶ 102} In the first assignment of error, we are asked to decide whether a sixty-three day delay between a trial court's decision to accept a withdrawal of a speedy trial waiver and trial is an unreasonable delay. The majority cites Madden for the proposition that only a delay approaching one-year is presumptively prejudicial. However, both Madden and the case it cites, Doggett v. United States (1992),505 U.S. 647, deal with an unreasonable delay from the date of arrest, not from the date on which a court accepts a withdrawal of a speedy trial waiver. Therefore, both of these cases are of very limited utility when determining whether the delay in this case was reasonable.
 {¶ 103} Nevertheless, a sixty-three day delay in this case was reasonable. The case was postponed at least once during this time because the court was "unavailable." Furthermore, there is no indication that appellant was prejudiced by this short delay. Accordingly, I agree with the majority's resolution of this assignment of error.
 {¶ 104} I must respectfully disagree with the majority's resolution of appellant's second assignment of error because the majority's analysis fails to consider those instructions as a whole. As the majority thoroughly describes, the trial court failed to tell the jury that appellant had to use a deadly weapon or dangerous ordinance in order to commit felonious assault. However, it told the jury that assault differed from felonious assault "by the absence or failure to prove physical harm by means of a deadly weapon."
 {¶ 105} The majority analogizes this case to State v. Wamsley, 7th Dist. No. 05-CO-11, 2006-Ohio-5303, which held that a trial court commits plain error when it fails to instruct the jury on all the essential elements of an offense. But it focuses its analysis on the trial court's instruction on felonious assault and not on the *Page 18 
jury instructions as a whole. "It is fundamental that jury instructions must be considered as a whole." State v. Jackson, 92 Ohio St.3d 436,446, 2001-Ohio-1266. When this is done in this case, it is clear that the trial court communicated to the jury that it could not find appellant guilty of felonious assault unless it first found that the State proved that he inflicted physical harm by means of a deadly weapon.
 {¶ 106} Admittedly, the trial court's instructions were inartful at best and may be subject to reversal if there had been a contemporaneous objection to them. However, those instructions did contain all the essential elements of the offense of felonious assault. I would not reverse the trial court's decision on this basis.
 {¶ 107} In his third assignment of error, appellant claims that his counsel was ineffective for not moving to suppress the handgun that was seized from his home. The majority concludes that this motion would have been denied because of exigent circumstances surrounding the incident, but I must respectfully disagree. The circumstances present in this case that we know now did not justify the warrantless search of the home. This is not to say that the evidence surely should be suppressed; such a decision can only be made after a properly held suppression hearing. However, it is enough to conclude that counsel was ineffective for not moving to suppress this evidence.
 {¶ 108} The majority fully describes the circumstances facing the officers at the time they made the warrantless entry into and search of the home. The police were called to the home because a neighbor saw and heard a domestic disturbance. When officers arrived on the scene, they heard an argument inside the house and saw appellant holding a handgun. The officers then ordered appellant out of the house and he, along with the victim and her two children, all came outside. It was only at this point that police officers entered into and searched the home.
 {¶ 109} The majority cites State v. Applegate, 68 Ohio St.3d 348, 1994-Ohio-0356, for the proposition that exigent circumstances can justify a warrantless entry into a home if police are at a residence in response to an emergency call reporting domestic violence and the officers hear sounds from the inside which are *Page 19 
indicative of violence. But this proposition, while correct, does not justify the entry and search in this case.
 {¶ 110} The United States Supreme Court has held that exigent circumstances exist in certain limited situations: 1) when the police are in hot pursuit of a fleeing felon, 2) to prevent the imminent destruction of evidence; 3) when there is a need to prevent a suspect's escape and 4) when there is an imminent risk of danger to the police or to other persons. Minnesota v. Olson (1990), 495 U.S. 91, 100. Exigent circumstances only justify a warrantless entry and search if the police officer reasonably believe that those circumstances exist. Mincey v.Arizona (1978), 437 U.S. 385, 392.
 {¶ 111} Applegate is merely an application of these principles to the facts of that case. In Applegate, the police were called to a home because of an alleged domestic dispute. When they arrived, they could hear both an argument and sounds like furniture being turned over inside the apartment. Based on this evidence, the officers believed that someone was in danger and entered the apartment. The officers did not search the apartment after entering into it. Thus, the officers' entry into the apartment was justified by their reasonable belief that someone may be in imminent danger and was limited to that emergency situation. The warrantless entry into and search of this home, on the other hand, was neither based on an officer's reasonable belief that exigent circumstances existed nor limited to the exigencies which justified its initiation.
 {¶ 112} In this case, the officer stated that he entered the home in order to make sure that nobody else was present and the majority states that it was reasonable for the officer to do so. Opinion at ¶ 64-65. However, this reason is not related to any of the situations which the United States Supreme Court has held qualify as exigent circumstances justifying a warrantless entry into a home. The officer was not in hot pursuit of a fleeing felon, was not preventing the imminent destruction of evidence, was not preventing a suspect's escape, and was not protecting anyone from the imminent risk of danger when he was merely looking to *Page 20 
see whether anyone else was present.
 {¶ 113} Furthermore, there is no evidence in the record showing that the officer could have reasonably believed that there was anyone left in the house. He testified that appellant and the family all came out of the house when asked to do so by the police. Without reasonable belief that anyone was in the home, this cannot form the basis for a warrantless entry into the home.
 {¶ 114} Finally, this reason for entering the home does not justify the search for the handgun. "A warrantless search must be `strictly circumscribed by the exigencies which justify its initiation.'"Applegate at 350, quoting Terry v. Ohio (1968), 392 U.S. 1, 26. The police found the gun in this case between the box springs and mattress in appellant's bedroom. It is, to say the least, extremely unlikely that the officer seriously expected to find anybody hiding in that particular place.
 {¶ 115} For all these reasons, the desire to ensure that no one was in the home does not justify the search for the handgun and cannot form the basis for denying a motion to suppress that handgun.
 {¶ 116} The majority also cites the need to ensure that the handgun in the home did not pose a safety hazard to the children as a reason justifying the search. Opinion at ¶ 65. However, this is also not an exigent circumstance justifying the entry and search. First, the fact that there was a handgun in the house did not pose an imminent danger to anyone. There are handguns in many houses in this country and children live in many of those houses. The fact that the two may be present in a house together does not justify a warrantless search of the house just to ensure that the weapons are stored in a safe manner.
 {¶ 117} Furthermore, there was no reason to suspect that the handgun would pose a danger to these children for two reasons. First, the appellant could have secured the handgun in a safe location, since it took him "a little bit of time" to come out of the house. But second, and more importantly, there is no reason to believe that the children were going back into that home anytime soon. Appellant *Page 21 
was being arrested by police and the childrens' mother was being taken to an emergency room via ambulance. The police were surely not going to leave the children in the home by themselves without any adult supervision.
 {¶ 118} Finally, the "safety hazard" the handgun posed was not an imminent danger; it was a potential danger. As the United States Supreme Court said in Mincey, exigent circumstances exist in "emergency situations." Id. at 392. If an officer does not reasonably believe that an emergency exists, then he should obtain a warrant before entering and searching a home.
 {¶ 119} The simple fact is that there is no reason to believe, based on the evidence in the record, that there was an emergency situation justifying the need to enter and search the home without a warrant. An entire family exited the home when asked to do so by the officers and they were not going back into the home soon. The officers had no reason to enter the home and look for the handgun without first obtaining a warrant allowing them to do so.
 {¶ 120} Of course, this conclusion is only based on the evidence introduced at trial and the parties were not litigating these issues at that time, so it is impossible to say whether the trial court should have suppressed the handgun. However, we can say that there is a reasonable possibility that the trial court would have granted that motion. Since appellant's act of leaving the handgun where he did formed the basis of his conviction for child endangerment, the suppression of this evidence would have affected the outcome of this trial.
 {¶ 121} The majority and I agree that appellant's convictions should be reversed and this case remanded for a new trial, albeit on different grounds. Therefore, I concur in its judgment, if not its rationale. *Page 1