DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Danny Wyatt, appeals from the judgment of the Summit County Court of Common Pleas finding him guilty of having a weapon under disability, in violation of R.C.2923.13(A)(2), assault, in violation of R.C. 2903.13(A), falsification, a violation of R.C. 2921.13(A)(3), and endangering children, a violation of R.C. 2919.22(A). We affirm.
 {¶ 2} On November 10, 2003, the Summit County Grand Jury issued a five count indictment charging Defendant with having a weapon under disability, assault, falsification and two counts of endangering children. On December 9, 2003, Defendant filed a motion to suppress. He alleged that the police illegally seized a gun from his home. The trial court held a hearing on Defendant's motion to suppress on January 20, 2004. By journal entry, dated January 29, 2004, the trial court overruled Defendant's motion to suppress.
 {¶ 3} Trial commenced on March 3, 2004. On March 5, 2004, the jury found Defendant guilty on all five counts of the indictment. On March 30, 2004, the trial court sentenced Defendant to one year incarceration on Count I, and six months incarceration on the remaining four counts. These sentences were to run concurrently.
 {¶ 4} Defendant appeals his conviction, raising three assignments of error for our review.
 Assignment of Error I
"The trial court improperly excused juror Brevetta after the jury was seated and over the objection of the defense."
 {¶ 5} In his first assignment of error, Defendant claims that the trial court erred in removing juror Brevetta, an Assistant Summit County Prosecutor, who had contacted his supervisors to inform them that he was sitting as a juror on a criminal trial. We disagree.
 {¶ 6} It is a discretionary function of the trial court to decide whether to remove a juror for bias. Berk v. Matthews
(1990), 53 Ohio St.3d 161, 168. An appellate court reviews a trial court's decision to remove a juror and replace him with an alternate juror under an abuse of discretion standard. State v.Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, at ¶ 80. An abuse of discretion is more than an error of judgment; it implies a decision that is "unreasonable, arbitrary, or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157. Therefore, the trial court's decision to remove a juror will not be reversed on appeal unless it is "manifestly arbitrary[.]" State v. Tyler
(1990), 50 Ohio St.3d 24, 31.
 {¶ 7} Crim.R. 24(F)(1) provides that: "[a]lternate jurors * * * shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." Crim R. 24 implicitly grants the trial court the authority to "sua sponte dismiss a juror when it determines that * * * a juror is not impartial or is otherwise unsuitable for service." State v. Midwest Pride IV,Inc. (1998), 131 Ohio App.3d 1, 20.
 {¶ 8} In the case at hand, Defendant tried to remove Juror Brevetta for cause during voir dire. The trial court initially refused to allow Defendant to remove Juror Brevetta. After the second day of trial, on March 4, 2004, Juror Brevetta went back to his job at the Summit County Prosecutor's Office and told his supervisors that he had been selected for a criminal jury. After learning of an email that Mr. Brevetta sent out to his supervisors regarding his selection as a juror, the trial judge met with Juror Brevetta in chambers, and upon questioning him, decided to replace Juror Brevetta with an alternate juror.
 {¶ 9} The court noted that Mr. Brevetta was an employee of the Summit County Prosecutor, the attorney in this case. In chambers, Mr. Brevetta stated that he did not feel that he would want attorneys, such as himself, sitting in the jury box. He claimed that he was "shocked" that he was chosen to be on the jury, and was uncertain of the propriety of his sitting in the jury box. Mr. Brevetta did claim that he thought he could be impartial, and that his co-worker's reactions would not sway his decision-making ability. However, upon consideration of the factors surrounding the propriety of Mr. Brevetta remaining a juror on this case, the court concluded that it was not appropriate for him to continue to serve on the jury.
 {¶ 10} We find that the trial court acted within its discretion in removing Juror Brevetta and replacing him with an alternate juror. R.C. 2313.42(E) states that: "[t]he following are good causes for challenge to any person called as a juror: * * * that he is the employer, the employee * * * counselor, agent, steward, or attorney of either party[.]" The trial judge's decision to remove an employee of one of the attorneys in the case, who had discussed his selection as a juror with his superiors despite the trial court's warning against discussing the case, does not constitute an abuse of discretion. Accordingly, Defendant's first assignment of error is overruled.
 Assignment of Error II
"Akron police officers illegally searched the residence of [Defendant] without first obtaining a search warrant."
 {¶ 11} In Defendant's second assignment of error, he claims that the Akron police officers engaged in an illegal, warrantless search of his residence. Defendant maintains that the trial court erred by not granting his motion to suppress evidence gained from the warrantless search. We disagree.
 {¶ 12} The decision to grant or deny a motion to suppress involves a mixed question of law and fact. State v. Putnam
(Feb. 27, 2002), 9th Dist. No. 20629, at 3. The trial court is in the best position to resolve factual questions and assess the credibility of witnesses when evaluating a motion to suppress.State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, an appellate court must accept the trial court's findings of fact so long as they are supported by competent, credible evidence.State v. Fanning (1982), 1 Ohio St.3d 19, 20. However, an appellate court reviews a trial court's legal conclusions on a motion to suppress evidence de novo. State v. Nazarian, 9th Dist. No. 04CA0017-M, 2004-Ohio-5448, at ¶ 8. A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. Statev. Amore, 9th dist. No. 03CA008281, 2004-Ohio-958, at ¶ 6.
 {¶ 13} The Fourth Amendment of the United States Constitution provides protection from warrantless searches and seizures.Middletown v. Flinchum (2002), 95 Ohio St.3d 43, 44. A warrantless search is per se unreasonable. State v. Pi KappaAlpha Fraternity (1986), 23 Ohio St.3d 141, 143-44. However, the police may lawfully enter a private residence without a warrant if the entry was made upon exigent circumstances. State v.Applegate (1994), 68 Ohio St.3d 348, 349. Exigent circumstances exist when there is a "necessity for immediate action that will `protect or preserve life or avoid serious injury,' or will protect a governmental interest that outweighs the individual's constitutionally protected privacy interest." (Citations omitted.) Nazarian, at ¶ 10. In this case, the police were told that there were unsupervised children in the house. The exigent circumstances exception to the warrant requirement applies when the police have a reasonable basis to believe someone inside the premises requires immediate aid. Parma v. Jackson (1989),58 Ohio App.3d 17, 18. Young children left unsupervised in a house provided exigent circumstances to permit a warrantless entry into the premises to locate the children, determine if they are in need of aid, and secure their safety.
 {¶ 14} Officer Fite testified that while he was trying to place Defendant under arrest, Defendant started yelling: "My kids, there's nobody home for my kids." Officer Fite told Defendant that they would take care of the kids. Officer Fite testified that if there were no other adults at home, the protocol was to call the Children's Services Board and have the children placed with that agency. The police would typically enter the house to look for any unattended children or any adults. If there was a responsible adult in the house, the police would leave the children with that adult. Otherwise, the unattended children would be placed with the Children's Services Board.
 {¶ 15} After Defendant was arrested, Officer Fite entered Defendant's residence to look for the children. He found two children and spoke to them. The children told him that they were ages three and four. When asked whether their mother was in the house, the children stated that she had left the house in a white truck. Officer Fite saw a white truck in the driveway and thought that the children's mother may have still been in the home. He searched the house looking for other adults or children that may have been there. When he went to the second floor of the house, he entered a room through a partially opened door. In that room, he observed a mattress on the floor, and at the foot of the mattress he "saw a red towel with a gun sticking out of part of it, and that [the] gun was loaded on the floor." He stated that "a quarter of the weapon was covered [by] the towel." He noticed that the weapon was a semiautomatic gun. "The slide was locked back and you could tell that it was a weapon easily without even having to approach it and examine it closely."
 {¶ 16} Under the exigent circumstances exception to the warrant requirement, the police were entitled to look through the house to see if there were other unattended children in need of care or supervision. The police were also permitted to search the house to see if there was a responsible adult present to take care of the children. "The exigent circumstances * * * extended to a reasonable search of the premises to locate supervision for the child." State v. Arbino (1996), 83 Ohio Misc.2d 12, 15, citing Magnuson v. Cassarella (N.D. Ill. 1992),813 F. Supp. 1321, 1324.
 {¶ 17} Since the officers were lawfully in Defendant's house, evidence found in plain view was properly admitted. State v.Kinley (1995), 72 Ohio St.3d 491, 495. Defendant does not deny that the gun the officers found was in plain view. "Under [the plain view] doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was `immediately apparent' that the item was incriminating." State v. Waddy (1992), 63 Ohio St.3d 424, 442, quoting Collidge v. New Hampshire (1971), 403 U.S. 443, 466,29 L.Ed.2d 564.
 {¶ 18} The officer's entry into Defendant's home was lawful under the exigent circumstances exception to the warrant requirement. Given that the entry was lawful, the gun in plain view was properly admitted into evidence. Defendant's second assignment of error is overruled.
 Assignment of Error III
"Defendant's [Civ.R.] 29 Motion for Aquittal was improperly denied With respect to Count I, Having a Weapon Under Disability and Counts IV V, Child Endangering."
 {¶ 19} In his final assignment of error, Defendant claims that the trial court erred in denying his Motion for Acquittal. He maintains that "the evidence linking the gun to the Defendant is insufficient on [sic] a matter of law." We disagree.
 {¶ 20} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 21} On a sufficiency of the evidence review "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) Jackson v. Virginia
(1979), 443 U.S. 307, 319, 61 L.Ed.2d 560. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Clemons (1998), 82 Ohio St.3d 438, 444, citingState v. Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 22} Defendant in this case was convicted of having a weapon under disability and child endangering. Under R.C.2923.13(A)(2), a person is guilty of having a weapon under disability if he was convicted of a felony offense of violence and knowingly acquires, possesses, carries or uses a firearm. Under R.C. 2919.22(A), a person is guilty of endangering children if he has custody or control of the children and "create[s] a substantial risk to the health or safety of the child[ren], by violating a duty of care, protection, or support."
 {¶ 23} The evidence presented at trial showed that Defendant had previously been convicted of a felony offense of violence; he was convicted of aggravated assault. To uphold Defendant's conviction for possessing a weapon under disability, therefore, it must be determined that reasonable minds could have concluded that Defendant acquired, possessed, used, or carried a firearm.
 {¶ 24} In this case, a police officer found a loaded gun in Defendant's house, at the foot of a mattress, partially covered by a towel. Defendant claims that the serial number on the gun did not show that he was the owner. He argues that even though the gun was found in his home, it could have easily belonged to another person with access to the home. Further he maintains that "[t]here is no evidence which suggests that the Defendant even know that the gun was in the bedroom or that the Defendant slept in the bedroom."
 {¶ 25} "In order to `have' a firearm [within the meaning of R.C. 2923.13], one must either actually or constructively possess it." (Emphasis omitted.) State v. Hardy (1978),60 Ohio App.2d 325, 327. The Ohio Supreme Court has held that a person has constructive possession of something when he is able to exercise dominion or control over that item. State v. Wolery (1976),46 Ohio St.2d 316, 329. Circumstantial evidence alone is sufficient to support the element of constructive possession. See Jenks,61 Ohio St.3d at 273.
 {¶ 26} In this case, circumstantial evidence does support the jury's conclusion that Defendant had constructive possession of the firearm. Defendant and his girlfriend, Jerry Dorsey, were the only two adults living in the house. The gun was found in the master bedroom where there were adult clothes, pictures, and other items. Ms. Dorsey testified that she lived at the house with Defendant and that the gun did not belong to her. She testified that no one had access to the bedroom other than herself and Defendant. Office Fite testified that when he found the gun, the two children were with him. They had followed him to the room. When he picked it up they said, "That's Daddy's gun. His big gun is at the other house."
 {¶ 27} We find that a reasonable juror could find that Defendant had a firearm, and thus was guilty of possessing a weapon under disability. It was not unreasonable for the jury to find that Defendant was guilty of child endangering. In a light most favorable to the prosecution, evidence shows that Defendant had a loaded, semiautomatic gun on the floor of a bedroom easily accessible to the 3 and 4 year old children. The door to the room with the gun was opened. There were no gates or other protective measures to ensure that one of the children did not enter the room and pick up the loaded weapon. The weapon was easily within reach of the children, there was nothing to prevent the children from picking up the gun. Such conduct clearly creates a "substantial risk" to the children's health under R.C. 2919.22.
 {¶ 28} The evidence persuades us that the jury did not lose its way in finding Defendant guilty. We find that a rational trier of fact could have found the essential elements of having a weapon under disability and child endangering beyond a reasonable doubt. Defendant's third assignment of error is overruled.
 {¶ 29} We overrule Defendant's assignments of error and affirm the judgment of the Summit County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Batchelder, concur.