OPINION
{¶ 1} Defendant-appellant, Patrick Howard, appeals from a Mahoning County Common Pleas Court judgment convicting him of one count of felonious assault, with a firearm specification, and one count of child endangering after a jury trial and the sentence that followed.
 {¶ 2} In the late hours of July 23, 2004, appellant and his long-time girlfriend, Barbara Pruitt, got into an argument about money at their Youngstown home. At home with them were the couple's two sons, ages ten and twelve. According to Pruitt, the argument escalated and appellant hit her in the head with a handgun.
 {¶ 3} The couple moved their fight outside into the driveway. A neighbor heard them and called 911. When police arrived, appellant and Pruitt were back in the house. Through a window, a police officer noticed appellant holding a handgun. The police announced their presence and appellant and Pruitt came outside.
 {¶ 4} Pruitt was bleeding from her head and was taken by ambulance to a hospital. One of the couple's children informed an officer that appellant hid the handgun under a bed. The officer recovered the gun, which was loaded, cocked, and ready to be fired. Appellant was arrested.
 {¶ 5} On August 26, 2004, a Mahoning County grand jury indicted appellant on one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2)(B), and two counts of child endangering, first-degree misdemeanors in violation of R.C. 2919.22(A). The felonious assault count also carried with it a firearm specification in violation of R.C. 2941.145(A).
 {¶ 6} The matter proceeded to trial on January 4, 2006. The jury returned guilty verdicts on all counts and the firearm specification. The trial court subsequently held a sentencing hearing. It sentenced appellant to seven years for felonious assault and three years for the firearm specification, to be served prior to and consecutive with the felonious assault sentence. It also sentenced him to six months on each of the child endangering counts that it merged together and merged with the felonious assault sentence for a total of ten years in prison. Appellant filed a timely notice of appeal on February 28, 2006. *Page 2 
 {¶ 7} Appellant raises six assignments of error, the first of which states:
 {¶ 8} "DEFENDANT/APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL AS THE STATE OF OHIO FAILED TO BRING HIS CASE TO TRIAL WITHIN THE TIME REQUIREMENTS AS SET FORTH IN ARTICLE ONE, SECTION TEN OF THE CONSTITUTION OF OHIO, CODIFIED AT OHIO REVISED CODE SECTION 2945.71"
 {¶ 9} Appellant argues that he was not brought to trial within the speedy trial time limit. He contends that he spent 329 days in jail awaiting trial.
 {¶ 10} Every person who is charged with an offense for which he may be deprived of his liberty or property is entitled to the fundamental right of a speedy trial. State v. Dunlap, 7th Dist. No. 01-CA-124, 2002-Ohio-3178, at ¶ 10. This is so because the right to speedy trial "`is premised upon the reality that fundamental unfairness is likely in overlong prosecutions.'" State v. Anderson, 7th Dist. No. 02-CO-30, 2003-Ohio-2557, at ¶ 13, quoting Dickey v. Florida (1970), 398 U.S. 30,54, 90 S.Ct. 1564, 26 L.Ed.2d 26.
 {¶ 11} Pursuant to R.C. 2945.71(C)(2), the state must bring a person charged with a felony to trial within 270 days after his arrest. If the accused is held in jail in lieu of bail on the pending charge, then each day he is held in jail counts as three days. R.C. 2945.71(E). This is known as the "triple-count" provision.
 {¶ 12} The time for speedy trial begins to run when an accused is arrested; however, the actual day of the arrest is not counted.State v. Szorady, 9th Dist. No. 02-CA-008159, 2003-Ohio-2716, at ¶ 12. Appellant was arrested on July 24, 2004. Thus, his speedy trial time began to run on July 25, 2004.
 {¶ 13} The court initially set appellant's trial for October 20, 2004. On October 8, appellant filed a waiver of right to speedy trial and requested a continuance of his trial. Thus, as of October 8, 2004, appellant waived his right to a speedy trial.
 {¶ 14} On October 21, 2004, the court revoked appellant's bond on the state's motion. However, his speedy trial waiver was still in effect. On November 4, 2004, the court reinstated appellant's bond. Once again, his speedy trial waiver was still in *Page 3 
effect.
 {¶ 15} Appellant subsequently made motions to continue on November 22, 2004, December 15, 2004, and January 13, 2005.
 {¶ 16} Additionally, on January 13, 2005, the court once again revoked appellant's bond. The court once again let appellant out on bond and once again revoked his bond on April 11, 2005. This time the court stated that appellant was not to be released. During this entire time, appellant's speedy trial waiver was still in effect.
 {¶ 17} On May 10, 2005, appellant filed a pro se motion to dismiss the charges against him for "want of prosecution * * * pursuant to O.R.C. 2945.71." R.C. 2945.71 sets out the speedy-trial time limits for bringing defendants to trial. The court denied the motion.
 {¶ 18} At the time appellant filed this motion, his speedy trial waiver was still in effect. "`Following an express, written waiver of unlimited duration by an accused of his right to speedy trial, the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time.'" State v. Shakoor, 7th Dist. No. 01-CA-121, 2003-Ohio-5140, at ¶ 10, quoting State v. O'Brien (1987),34 Ohio St.3d 7, 516 N.E.2d 218, paragraph two of the syllabus. Appellant's pro se motion does not comply with the requirement set out in O'Brien. He did not demand a trial as is required. Such a demand was necessary. SeeState v. Love, 7th Dist. No. 02-CA-245, 2006-Ohio-1762, at ¶ 134. Thus, his speedy trial waiver remained in effect.
 {¶ 19} Furthermore, after filing this motion, appellant filed two more motions for continuances on June 21 and September 8, 2005. The court granted these motions and set the case for an October 19, 2005, pre-trial.
 {¶ 20} On October 19, 2005, the court sua sponte continued the case because it was engaged in another criminal trial.
 {¶ 21} On November 1, 2005, at a pre-trial, the trial court accepted appellant's *Page 4 
withdrawal of his speedy trial waiver. However, no formal written objection and demand for trial appears here in the record as is required by O'Brien. Thus, we could conclude that appellant did not revoke his waiver of speedy trial. See State v. Wright, 9th Dist. No. 02CA008179, 2003-Ohio-3511, at ¶ 17 ("Although the trial court found that Defendant withdrew his prior time waiver, we do not agree. We conclude that Defendant did not withdraw his prior time waiver as he failed to comply with the requirements of O'Brien. Specifically, he failed to file a formal written objection, and we will not construe Defendant's inclusion of the words `does not' as a formal objection, and he failed to file a demand for trial. Therefore, his initial waiver remained in effect.")
 {¶ 22} Nevertheless, the trial court accepted appellant's withdrawal of his speedy trial waiver. Thus, presuming appellant's speedy trial waiver was no longer in effect and the state now had to bring appellant to trial within a reasonable time according to O'Brien, we will continue with the analysis.
 {¶ 23} The court set appellant's trial for December 5, 2005. However, on that day, "due to the unavailability of the Court," the court continued the trial to December 13. R.C. 2945.72(H) allows for the tolling of an accused's speedy trial time upon the issuance of a sua sponte continuance by the trial court as long as the continuance is reasonable. State v. Barker, 6th Dist. No. L-01-1290, 2003-Ohio-5417, at ¶ 18. An eight-day continuance was reasonable.
 {¶ 24} The case ultimately proceeded to trial on January 4, 2006. No explanation appears in the record as to why the trial did not commence on December 13, 2005. Thus, 63 days passed from the time the trial court accepted appellant's withdrawal of his speedy trial waiver until the trial began.
 {¶ 25} The Supreme Court has set out a balancing test where the following factors are weighed to determine whether a defendant was brought to trial within a reasonable time: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. O'Brien, 34 Ohio St.3d at 10, citingBarker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct. 2182. Courts are first to *Page 5 
consider the length of the delay because unless there is a delay that is presumptively prejudicial, there is no need to inquire into the other factors. State v. Saphire (Dec. 8, 2000), 2d Dist. No. 2000CA 39, citingO'Brien, 34 Ohio St.3d at 10.
 {¶ 26} The 63-day delay in bringing appellant to trial was reasonable. "Courts have generally found that a delay approaching one year becomes `presumptively prejudicial.'" State v. Madden, 10th Dist. No. 04AP-1228,2005-Ohio-4281, citing Doggett v. United States (1992), 505 U.S. 647,652, fn. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520. Appellant was brought to trial in just over two months. Such a delay was not presumptively prejudicial. See Madden, 10th Dist. No. 04AP-1228, (five month-delay was not presumptively prejudicial); State v. Untied (June 5, 2001), 5th Dist. No. 00-CA-32 (trial commencing within the statutory time period would be reasonable).
 {¶ 27} Thus, whether appellant properly withdrew his speedy trial waiver or not, the result is the same. Either way, the state brought appellant to trial within the appropriate amount of time. Accordingly, appellant's first assignment of error is without merit.
 {¶ 28} Appellant's second assignment of error states:
 {¶ 29} "THE TRIAL COURT'S INSTRUCTIONS ON THE OFFENSE OF FELONIOUS ASSAULT WERE INCOMPLETE, MISLEADING, OR INCORRECT."
 {¶ 30} Here appellant claims that the court's jury instruction on felonious assault was incorrect. He argues that the court mistakenly instructed the jury on simple assault, not felonious assault. He asserts that the court was required to, and failed to, instruct the jury that in order to find him guilty of felonious assault it had to find that he knowingly caused or attempted to cause physical harm to Pruitt bymeans of a deadly weapon. Appellant argues that the court's failure to so instruct the jury was plain error.
 {¶ 31} Appellant did not object to the jury instruction. Absent plain error, the failure to object to a jury instruction constitutes a waiver of the issue on appeal. State v. Underwood (1983), 3 Ohio St.3d 12,444 N.E.2d 1332, at the syllabus; *Page 6 
Crim.R. 30. Plain error should be invoked only to prevent a clear miscarriage of justice. Id. at 14. Plain error is one in which but for the error, the outcome would have been different. State v. Long (1978),53 Ohio St.2d 91, 97, 372 N.E.2d 804.
 {¶ 32} In examining the trial court's jury instructions we must review the court's charge as a whole, not in isolation, in determining whether the jury was properly instructed. State v. Burchfield (1993),66 Ohio St.3d 261, 262, 611 N.E.2d 819.
 {¶ 33} In instructing the jury on felonious assault, the court stated:
 {¶ 34} "The defendant is charged with felonious assault. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 23rd or 24th day of July, 2004, and in Mahoning County, Ohio, the defendant knowingly caused or attempted to cause physical harm to Barbara Pruitt." (Tr. 407-408).
 {¶ 35} The court then went on to specifically define knowingly, cause, physical harm, attempt, and deadly weapon. When the court instructed the jury about what a deadly weapon was, it stated:
 {¶ 36} "Deadly weapon means an instrument, device, or thing capable of inflicting death and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." (Tr. 409).
 {¶ 37} The court next instructed the jury as to the firearm specification. The court then instructed the jury that if it found that the state failed to prove felonious assault, it could then consider the lesser included offense of simple assault. The court instructed:
 {¶ 38} "Ladies and gentlemen, there's felonious assault. I've just defined that to you. But there's also a lesser included called simple assault. So if you find that the state failed to prove all of the essential elements of felonious assault, then your verdict must be not guilty. You can then go on to consider the lesser included called simple assault.
 {¶ 39} "The offense of assault — or simple assault, as I just referred to it, is distinguished from felonious assault by the absence or failure to prove physical harm *Page 7 
by means of a deadly weapon.
 {¶ 40} "Assault is knowingly causing or attempting to cause physical harm." (Tr. 412).
 {¶ 41} The court committed plain error in instructing the jury. Appellant was charged with felonious assault in violation of R.C.2903.11(A)(2), which provides: No person shall knowingly "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." When the court instructed the jury as to the elements of felonious assault, it left out the element "by means of a deadly weapon or dangerous ordnance." The court's instructions to the jury on what they had to find in order to convict him of felonious assault were merely the elements of simple assault. And while the court later defined what a deadly weapon was, it did not state that the jury had to find that appellant used a deadly weapon in order to convict him of felonious assault.
 {¶ 42} One could argue that when the court went on to define simple assault for the jury, it cleared up its earlier mistake by instructing the jury that simple assault is distinguished from felonious assault by the absence or failure to prove physical harm by means of a deadly weapon. However, this argument is unpersuasive. The court sent the written jury instructions with the jury to refer to during deliberations. When the jury was determining whether appellant committed felonious assault, they likely turned to the court's definition of felonious assault — which was actually the definition of simple assault. It seems likely that the jury could have considered the court's definition of deadly weapon for only the firearm specification since this instruction immediately followed. Thus, when the jury returned a guilty verdict for felonious assault, it seems likely that what they could have actually found that appellant was guilty of was simple assault.
 {¶ 43} This court dealt with a somewhat similar situation in State v.Wamsley, 7th Dist. No. 05-CO-11, 2006-Ohio-5303. In Wamsley, the defendant was convicted of aggravated burglary following a jury trial. He appealed arguing that the trial court committed plain error by failing to instruct the jury on the culpable mental state for *Page 8 
trespass — that the jury had to find that he knowingly trespassed.
 {¶ 44} This court noted that the mental state of knowingly is one of the essential elements of aggravated burglary and therefore, the trial court was required to include it in the jury instructions. Id. at ¶ 31. We then went on to address whether it was plain error not to do so. We examined the Ohio Supreme Court's decision in State v. Adams (1980),62 Ohio St.2d 151, 404 N.E.2d 144, paragraphs two and three of the syllabus, where the Court held:
 {¶ 45} "2. Failure of a trial court to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged does not per se constitute plain error under Crim.R. 52(B).
 {¶ 46} "3. Where a trial court's failure to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged is asserted to be plain error under Crim.R. 52(B), the reviewing court must examine the record in order to determine whether that failure may have resulted in a manifest miscarriage of justice. (State v. Long, 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus, approved and followed.)"
 {¶ 47} The trial court in Adams failed to instruct the jury on the essential element of recklessness in its child endangering instruction. The Ohio Supreme Court noted that as a general rule, the defendant is entitled to have the jury instructed on all essential elements and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error. Wamsley, at ¶ 38 citing Adams, at 153. The Court further stated that if the defendant did not propose any jury instructions and did not object when the instructions were given to the jury, then the error should be reviewed for plain error. Id.
 {¶ 48} The Adams Court determined that the faulty jury instructions did not rise to the level of plain error because the defendant's culpable mental state was never at issue. Id. at ¶ 39 citingAdams, at 155. We pointed out:
 {¶ 49} "In Adams, the defendant argued at trial that he was not at the scene of *Page 9 
the crime and that someone else must have committed it, and he did not challenge the state's evidence that the victim had been subjected to severe and repeated beatings. Id. The Adams Court concluded that there was no manifest injustice in the faulty jury instructions because no jury could have found that the crime was the result of mere negligence, rather than recklessness. Id. Thus, under a plain error analysis, theAdams Court concluded that the error was not reversible error." Id.
 {¶ 50} We distinguished Wamsley's case because Wamsley's culpable mental state was an issue at trial. Id. at ¶ 40. We also pointed out that in an Eleventh District case the court held that the failure to instruct the jury on an essential element of the crime is such a fundamental constitutional error that prejudice must be presumed and the judgment must be reversed as plain error. Id. at ¶ 46, citing State v.Smith (Jan. 20, 1989), 11th Dist. No. 1720. And we noted that theSmith opinion seemed to treat the jury instruction error as "a `structural error,' referring to a rare type of constitutional error, `affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" Id., quotingSmith. Additionally, we observed that federal appellate cases governing Ohio hold that it is a structural error to fail to instruct the jury on all the essential elements of the crime, and that such cases are automatically reversible on habeas corpus review. Id. at ¶ 47. Finally, we noted that other Ohio appellate courts have held that a failure to instruct the jury as to one of the essential elements of the crime requires reversal, whether as plain error or as automatically reversible structural error. Id. at ¶ 53, citing State v. Reyes, 6th Dist. No. WD-03-059, 2005-Ohio-2097; State v. Stacy, 12th Dist. No. CA2002-03-073, 2003-Ohio4752; State v. Collins (1993), 88 Ohio App.3d 291, 295,623 N.E.2d 1269 (2d District); State v. Stephenson (Aug. 7, 1991), 9th Dist. No. 90CA004942.
 {¶ 51} Based on all of the above authority, we concluded:
 {¶ 52} "It would appear from the numerous authorities cited above that failure to instruct the jury on all the elements of the crime is a type of fundamental error that satisfies the requirements of the plain error rule and, in the vast majority of cases, *Page 10 
necessitates a reversal of the judgment. [State v. ]Martin,103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶ 53. For all these reasons, we sustain Appellant's third assignment of error and hold that, under the facts of this case, the failure of the trial court to instruct the jury on the culpable mental state for criminal trespass as part of the definition of the crime of aggravated burglary warrants reversal."Wamsley, at ¶ 55.
 {¶ 53} As was the case in Wamsley, the case sub judice can be distinguished from Adams. At trial, appellant tried to establish that he did not use a gun to beat the victim by questioning the officer who found the gun as to why his report did not indicate that there was any blood on the gun. (Tr. 368). Additionally, he attempted to attack the victim's credibility by bringing out testimony that she was drunk on the night in question and was not sure about the use of a gun. (Tr. 281-82). Thus, appellant made an issue at trial as to whether he used a gun to beat his victim.
 {¶ 54} Based on this court's reasoning in Wamsley, the trial court's failure to instruct the jury on the element of a deadly weapon when reading the felonious assault instruction was plain error. Accordingly, appellant's second assignment of error has merit.
 {¶ 55} Appellant's third assignment of error states:
 {¶ 56} "DEFENDANT/APPELLANT WAS DEPRIVED OF A FAIR TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 57} Appellant argues that his trial counsel was ineffective in several ways.
 {¶ 58} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result *Page 11 
of the trial would have been different. Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 59} Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279, 289,714 N.E.2d 905. In Ohio, a licensed attorney is presumed competent. Id.
 {¶ 60} First, appellant argues that his counsel should have filed a motion to suppress the handgun that police seized from his home because they did not have a warrant.
 {¶ 61} When police arrived at appellant's home on a domestic violence call, the couple's son Patrick Jr. told them where they could find the handgun. Because the police were at appellant's home on a domestic violence call and were unsure whether there were people in the house who could be in danger or pose a threat to them, they were entitled to the emergency exception to the warrant requirement.
 {¶ 62} "Exigent circumstances justify a warrantless entry into a residence by police when police are at the residence pursuant to an emergency call reporting domestic violence and where the officers hear sounds coming from inside the residence which are indicative of violence." State v. Applegate (1994), 68 Ohio St.3d 348, 349,626 N.E.2d 942.
 {¶ 63} In this case, appellant's neighbor, Jessica Farrier, called 911 because she saw and heard appellant and Pruitt fighting in their driveway and witnessed appellant hit Pruitt with a gun. (Tr. 311-14). Additionally, Officer Malik Mostella testified that when he arrived on the scene, appellant and Pruitt were in the house. (Tr. 354). While he was still outside, Mostella heard an argument going on inside and, through a window, saw appellant holding a handgun. (Tr. 354-55).
 {¶ 64} Officer Mostella and the other officers on the scene ordered appellant to come out of the house. (Tr. 357-59). Appellant eventually came out as did Pruitt and the two children. (Tr. 359). Officer Mostella stated that he then searched the house to make sure nobody else was there. (Tr. 359).
 {¶ 65} These conditions seem to be enough to constitute exigent *Page 12 
circumstances justifying a warrantless entry into the house. The police had witnessed appellant indoors with a gun, heard an argument, knew children had been in the house, knew the gun must still be in the house, and were unsure whether anybody remained in the house. Given these circumstances, it was reasonable for the officers to enter the house without a warrant to make sure nobody else was inside. Another child could have been in the house with a loaded gun causing a safety hazard or appellant could have had a cohort in the house who could use the gun against the officers. Therefore, the officers had an exception to the warrant requirement. Thus, we cannot conclude appellant's counsel was ineffective for failing to file a motion to suppress on this basis.
 {¶ 66} Second, appellant contends that his counsel should have objected to the jury instruction on felonious assault. Because we have already determined that the trial court erred in instructing the jury, we need not address this issue further.
 {¶ 67} Third, appellant asserts that his counsel should have asked for instructions on the lesser included offenses of aggravated assault and simple assault.
 {¶ 68} Appellant fails to notice that the trial court did instruct the jury on the lesser included offense of assault. At pages 412-13 of the transcript, the court clearly instructed the jury on assault, or simple assault. It also instructed the jury that if it found that the state failed to prove all of the elements of felonious assault, then it was to move on to consider the lesser included offense of simple assault. (Tr. 412).
 {¶ 69} Appellant also argued counsel should have asked for a jury instruction on aggravated assault. However, the evidence did not support such an instruction. R.C. 2903.12(A) defines aggravated assault as:
 {¶ 70} "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
 {¶ 71} "(1) Cause serious physical harm to another or to another's unborn; *Page 13 
 {¶ 72} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance * * *."
 {¶ 73} There was no evidence presented during trial that appellant was under the influence of sudden passion or was in a sudden fit of rage, brought on by serious provocation by Pruitt. Pruitt simply testified that the couple was arguing about money and their argument escalated. Thus, appellant's counsel was not ineffective for failing to request a jury instruction on aggravated assault.
 {¶ 74} Accordingly, appellant's third assignment of error is without merit.
 {¶ 75} Appellant's fourth assignment of error states:
 {¶ 76} "DEFENDANT/APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 77} Appellant contends that his convictions for felonious assault and child endangering were against the manifest weight of the evidence.
 {¶ 78} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 79} Because the trial court erred in failing to instruct the jury on one of the elements of felonious assault, appellant's assignment of error is moot with regard to his felonious assault conviction and the accompanying firearm specification. However, this assignment of error is still relevant as to his child endangering convictions. *Page 14 
 {¶ 80} The jury convicted appellant of two counts of child endangering in violation of R.C. 29219.22(A), which provides in relevant part:
 {¶ 81} "No person, who is the parent, * * * of a child under eighteen years of age * * *, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."
 {¶ 82} The jury had adequate evidence on which to convict appellant.
 {¶ 83} Patrick Jr., who was 12 years old at the time of the offense, testified that when the police arrived at their house, appellant wiped the blood off the gun and placed it under the bed. (Tr. 299-300). Patrick Jr. stated that he watched his father do this. (300-301). Patrick Jr. stated that appellant then went outside. (Tr. 301).
 {¶ 84} Officer Mostella also testified that Patrick Jr. told him appellant put the gun under the bed. (Tr. 361). Mostella stated that the gun was exactly where Patrick Jr. said it would be. (Tr. 361). Additionally, Mostella stated that when he recovered the gun from under the bed, the gun was loaded, cocked, and ready to be fired. (Tr. 363).
 {¶ 85} In addition to Patrick Jr., appellant's other son Cedric, who was ten years old at the time, was present the night of the offense.
 {¶ 86} At least one other court has found that leaving a loaded weapon in home with children where they could access it is enough evidence to convict a defendant for child endangering. See State v. Wyatt, 9th Dist. No. 22070, 2004-Ohio-6546, at ¶ 27 ("In a light most favorable to the prosecution, evidence shows that Defendant had a loaded, semiautomatic gun on the floor of a bedroom easily accessible to the 3 and 4 year old children. The door to the room with the gun was opened. There were no gates or other protective measures to ensure that one of the children did not enter the room and pick up the loaded weapon. The weapon was easily within reach of the children, there was nothing to prevent the children from picking up the gun. Such conduct clearly creates a `substantial risk' to the children's health under R.C. 2919.22.").
 {¶ 87} The fact that appellant left a loaded, cocked, ready-to-be-fired handgun *Page 15 
under a bed in the house where his ten-year-old and twelve-year-old sons had access to it was competent evidence on which the jury could have found him guilty of child endangering. Appellant's older son knew exactly where appellant placed the gun. And it is highly conceivable that pre-teen boys would seek out a handgun in the house and examine it out of curiosity. The fact that it was loaded and ready to be fired put the boys' health and safety at a substantial risk. Thus, appellant's child endangering convictions were not against the manifest weight of the evidence.
 {¶ 88} Accordingly, appellant's fourth assignment of error is without merit.
 {¶ 89} Appellant's fifth assignment of error states:
 {¶ 90} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE ERRORS AS SET FORTH HEREIN."
 {¶ 91} Appellant contends that due to the errors alleged above in his previous assignments of error, we must reverse his convictions based on the cumulative effect of these alleged errors.
 {¶ 92} The only assignment of error that has merit is appellant's second assignment of error. Thus, there were no cumulative errors. Accordingly, appellant's fifth assignment of error is without merit.
 {¶ 93} Appellant's sixth assignment of error states:
 {¶ 94} "THE SENTENCE OF DEFENDANT/APPELLANT IS UNCONSTITUTIONAL IN THAT THE SAME WAS IMPOSED UPON DEFENDANT/APPELLANT FOLLOWING JUDICIAL FACT FINDING IN VIOLATION OF [THE] SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 95} Appellant argues that his sentence must be reversed because the trial court engaged in judicial fact-finding, which the Ohio Supreme Court found unconstitutional in State v. Foster, 109 Ohio St.3d 1,845 N.E.2d 470, 2006-Ohio-856.
 {¶ 96} We have already determined that appellant's felonious assault conviction must be reversed. Therefore, his sentence for felonious assault and the sentence on the accompanying firearm specification are vacated. Accordingly, *Page 16 
appellant's assignment of error is moot in this regard.
 {¶ 97} That leaves appellant with a sentence on his child endangering convictions. The trial court sentenced appellant to six months on each count of child endangering, which it merged together and merged with the seven-year sentence for felonious assault and the accompanying three-year sentence for the firearm specification. Thus, all that remains of appellant's sentence is six months for the two counts of child endangering.
 {¶ 98} In Foster, the Ohio Supreme Court held that Ohio's felony sentencing statutes requiring judicial fact-finding before imposing non-minimum or consecutive sentences violate the Sixth Amendment right to a jury trial. Id. at ¶ 83. Ohio's misdemeanor sentencing statutes were not at issue in Foster.
 {¶ 99} The child endangering counts were misdemeanor convictions. In sentencing appellant on these two misdemeanors, no error occurred. Thus, his sixth assignment of error is without merit.
 {¶ 100} Based on the merit of appellant's second assignment of error,
appellant's conviction for felonious assault and the accompanying firearm specification are hereby reversed and the matter is remanded for a new trial. Appellant's convictions and sentence for child endangering are hereby affirmed.
Waite, J., concurs.
DeGenaro, P.J., concurs in judgment only. See concurring opinion.